<span style="color:red">Corrected</span>

# In the United States Court of Federal Claims

No. 22-657C

(Filed:  September 12, 2022)

|  |  |
|---|---|
| **FOCUS REVISION PARTNERS,** | ) |
| *Plaintiff,* | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| *Defendant,* | ) |
| **and** | ) |
| **NWI&T ATKINS SB JV, LLC,** | ) |
| *Defendant-Intervenor.* | ) |

*Matthew T. Schoonover*, Schoonover & Moriarty LLC, Olathe, KS, for Plaintiff.  Of counsel were *Matthew P. Moriarty*, *John M. Mattox II*, and *Ian P. Patterson*.

*Matthew P. Roche*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Steven J. Gillingham*, Assistant Director.

*Joshua A. Mullen*, Womble Bond Dickinson (US) LLP, Washington, D.C., for Defendant-Intervenor.  Of counsel was *Julius Bodie*.

## OPINION AND ORDER

**SOLOMSON**, **Judge.**

The law is full of arcane procedural technicalities, to the point where an observer — whether trained in the law or not — might reasonably ask whether a particular legally correct outcome is fair or just.[1]  For example, if a plaintiff files suit in this Court for breach

---

[1] *See* Michael Herz, *"Do Justice!": Variations of a Thrice-Told Tale*, 82 Va. L. Rev. 111, 113 (1996) (discussing the "age-old struggle to define the relation of law and justice" and commenting that

of contract just one second after an applicable statute of limitations has run, this Court is duty-bound to dismiss the complaint even where the government may otherwise admit to owing damages and notwithstanding the harsh result.[2]  Not all technical or procedural deficiencies, however, are fatal; some filing defects, for example, may be remedied even as late as after trial.

In this case, Plaintiff, Focus Revision Partners ("FRP"), unquestionably made an error in its size protest and appeal before the Small Business Administration ("SBA"), and the question before this Court is whether Defendant, the United States — acting by and through the SBA — improperly denied FRP's request to remedy its mistake.  The short answer is that the SBA improperly transformed a mere clerical error into a fatal jurisdictional defect.  For this Court to rule otherwise would improperly sanctify form over substance.  It's one thing to do that where the law mandates it or where permitting a procedural fix would prejudice another party, but neither is the case here and, thus, this Court grants FRP's motion for judgment on the administrative record.

## I.   FACTUAL BACKGROUND[3]

### A.  The Procurement

On March 15, 2021, the Federal Emergency Management Agency ("FEMA") issued a pre-solicitation notice (the "Notice") for Solicitation No. 70FA6021R00000002 (the "Solicitation"), pursuant to Federal Acquisition Regulation ("FAR")[4] 36.6, seeking architect and engineering services to support the Federal Insurance and Mitigation Administration's Risk Mapping, Assessment, and Planning program.  AR 2165, 2167.  The Notice informed potential offerors that FEMA intended to issue a single-award contract with a performance period covering a twelve-month base period and four one-year option periods.  AR 1609 (Solicitation Synopsis).  The procurement is a small business set-

---

such "distinction is perhaps more often celebrated within the legal profession and more often lamented outside it").

[2] See Textron Aviation Def. LLC v. United States, -- Fed. Cl. --, 2022 WL 3333218, at *16 (2022) ("This Court . . . is bound to apply the statute of limitations as written, without regard to whether the government may have actually owed the pension costs at issue[.]").

[3] This background section constitutes the Court's findings of fact drawn from the administrative record.  Rule 52.1 of the Rules of the United States Court of Federal Claims, covering judgment on the administrative record, "is properly understood as intending to provide for an expedited trial on the record" and requires the Court "to make factual findings from the record evidence as if it were conducting a trial on the record."  Bannum, Inc. v. United States, 404 F.3d 1346, 1354, 1356 (Fed. Cir. 2005).  Citations to the administrative record, see ECF No. 18, are denoted as "AR" followed by the page number.  Additional findings of fact are made throughout Section V.

[4] The FAR is located at 48 C.F.R. ch. 1.

aside issued under North American Industry Classification System code 541330, with a size standard of $16.5 million.  AR 1609.

The Notice indicated that FEMA planned to evaluate offers in two phases.  AR 1610, 1617.  In phase one, offerors had to submit Standard Form ("SF") 330.[5]  AR 1610–15.  After reviewing those submissions, FEMA would "conduct discussions with at least three firms considered most highly qualified to perform the required work."  AR 1615.  In phase two, the contracting officer would "issue [the] [S]olicitation and commence cost/price negotiations . . . beginning with the most preferred firm as determined by the Source Selection Authority."  AR 1617.  Thereafter, FEMA would make an award "to the most qualified, responsible [o]fferor with fair and reasonable cost/pricing."  AR 1609.  Proposals for phase one were due on April 14, 2021.  AR 1610.  FRP and Defendant-Intervenor, NWI&T Atkins SB JV, LLC ("NWI&T"), submitted timely proposals for phase one.  AR 4 (FEMA Referral Letter to SBA) (identifying FRP and NWI&T as "offerors"); AR 300 (Pre-Award Notice) (notifying FRP that it was not the "successful offeror" and that FEMA "will not consider subsequent revisions of [FRP]'s proposal").

On June 25, 2021, FEMA issued a request for proposal to NWI&T.  AR 2064 (FEMA Email to SBA dated Oct. 14, 2021).  On July 13, 2021, NWI&T submitted its phase two proposal.  AR 2064.  On September 15, 2021, FEMA notified FRP that NWI&T was selected as the apparent awardee.  AR 300.

### B.  FRP's Size Protest

On September 17, 2021, pursuant to 13 C.F.R. §§ 121.1001, 121.1003–121.005, 121.1007, and FAR 19.302, FRP filed a size protest with the cognizant contracting officer at FEMA challenging NWI&T's status as a small business.  FEMA promptly referred FRP's protest to the relevant SBA area office.  AR 4–5 (FEMA Referral Letter to SBA).  The size protest, however, contained a clerical error: it incorrectly indicated that "Focus Revision Partners JV, LLC" was the protestor.  *See, e.g.*, AR 6 (FRP Size Protest).  Despite this clerical error, the cognizant contracting officer correctly understood that the protestor was FRP, one of the "unsuccessful offerors" in the procurement.  *See* AR 4 ("FEMA received notice, via email to the Contracting Officer, . . . that Focus Revision Partners, *one of the unsuccessful offerors*, is formally protesting the small business size of the apparent successful offeror, NWI&T Atkins SB JV, LLC." (emphasis added)); AR 2 (FEMA Email to SBA dated Sept. 17, 2021) (same); AR 5 ("Size Protest *from Focus Revision Partners*, dated September 17, 2021" (emphasis added)).

FRP alleged in its size protest that NWI&T, a joint venture, does not qualify as a small business because the joint venture is "non-compliant" with SBA's mentor-protégé

---

[5] SF 330 "is prescribed for use in obtaining information from architect-engineer firms regarding their professional qualifications."  FAR 52.236-2(b).

regulations and because NWI&T does not possess a valid mentor-protégé agreement.  AR 6–22.  On September 20, 2021, the SBA area office notified NWI&T of the size protest.  AR 912–14 (SBA Notice of Protest to NWI&T).  Neither the SBA nor NWI&T questioned FRP's status as an offeror in the procurement; nor did NWI&T seek to dismiss the size protest.  On October 20, 2021, the SBA denied the size protest, concluding that NWI&T is a small business in accordance with the procurement's size standard.  AR 2074–95 (SBA Size Determination).

### C.  FRP's Size Appeal

On November 4, 2021, FRP, again using the name "Focus Revision Partners JV, LLC," filed a size appeal with the SBA's Office of Hearings and Appeals ("OHA"), seeking to reverse the results of the unsuccessful size protest.  AR 2099–116 (FRP OHA Size Appeal).

On March 24, 2022, NWI&T filed a motion to dismiss, asserting that "Focus Revision Partners JV, LLC," lacks standing to file a size appeal because "Focus Revision Partners JV, LLC . . . is not an eligible offeror for this procurement and apparently did not submit a proposal for this procurement," and, thus, the "size appeal has been filed by an entity that is not adversely affected by [the] Size Determination," in accordance with 13 C.F.R. § 134.302(a).  AR 2391 (NWI&T OHA Motion to Dismiss).

On April 1, 2022, FRP filed its response to the motion to dismiss, as well as a motion to amend its pleadings to correctly identify itself, the appellant, as "Focus Revision Partners."  AR 2451–62 (FRP OHA Motion to Amend).  FRP argued that it was the real party-in-interest, and that OHA should simply amend the caption of the case to reflect the correct name of the offeror entity, FRP.  AR 2452–53 (explaining that "Focus Revision Partners' portrayal of its name as Focus Revision Partners JV LLC in this appeal was a *mere clerical error*" and that "Focus Revision Partners JV LLC does not exist").

On May 11, 2022, OHA granted NWI&T's motion to dismiss and denied FRP's motion to amend.  AR 2582–88 (OHA Dismissal Order); *Focus Revision Partners JV LLC*, SBA No. SIZ-6152, 2022 WL 1641424 (May 11, 2022).  Specifically, OHA held:  (1) because Focus Revision Partners JV, LLC "simply does not exist," it "plainly lacks standing to protest or to appeal," AR 2586; and (2) because Focus Revision Partners JV, LLC "lacked standing to have filed the initial appeal, Appellant also lacks standing to later amend that appeal," AR 2587.  OHA further reasoned that even if its regulations permitted "substitut[ion] [of] the name of a different entity as the real party in interest for appeal purposes," fixing the OHA caption would not help because it would not "retroactive[ly]" cure the initial size protest, which also had employed the wrong name.  AR 2588.

4

## II.     PROCEDURAL HISTORY

On June 15, 2022, FRP filed its complaint against the United States in this Court. ECF No. 1 ("Compl."). That same day, NWI&T filed an unopposed motion to intervene, ECF No. 8, which the Court granted. On July 7, 2022, the government filed the administrative record in this matter. *See* ECF No. 18.

FRP's complaint alleges that: (1) "OHA's failure to amend the size appeal violated its regulations" (Count I); (2) "OHA's failure to amend the size appeal was arbitrary and capricious" (Count II); and (3) "NWI&T . . . is ineligible for award under the Solicitation" (Count III). Compl. ¶¶ 26–63. FRP requests that this Court "either remand this matter back to . . . OHA to issue a final decision on NWI&T['s] . . . small business eligibility" or that this Court should "itself find NWI&T . . . to be an ineligible small business under the Solicitation." *Id.* ¶ 64.

On July 18, 2022, FRP filed a motion for judgment on the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). On July 29, 2022, the government and NWI&T (collectively, "Defendants") filed cross-motions for judgment on the administrative record. *See* ECF No. 21 ("Def. MJAR"); ECF No. 20 ("Intv. MJAR"). On August 5, 2022, FRP filed its reply brief. ECF No. 23 ("Pl. Reply"). On August 12, 2022, Defendants filed their reply briefs. *See* ECF No. 25 ("Def. Reply"); ECF No. 26 ("Intv. Reply"). On August 25, 2022, the Court held oral argument. *See* ECF No. 33 ("Tr.").

On September 6, 2022, the parties filed a joint motion to remand this matter to OHA pursuant to RCFC 52.2. ECF No. 34 ("Mot. to Remand").

## III.     JURISDICTION AND STANDING

The Tucker Act provides that an "interested party" may file an "action" in this Court "objecting [1] to a solicitation by a Federal agency for bids or proposals for a proposed contract or [2] to a proposed award or [3] the award of a contract or [4] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 559 & n.18 (2021) ("Section 1491(b) actions are typically referred to as 'bid protests.'").[6] Challenges to SBA and OHA decisions fall "within the scope of jurisdiction

---

[6] *Cf. Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 96–97 (2020) ("[A]lthough '[the Administrative Dispute Resolution Act] covers *primarily* pre- and post-award bid protests,' the Federal Circuit in *RAMCOR* explicitly reversed this Court's determination 'that a [plaintiff] could only invoke § 1491(b)(1) jurisdiction by including in its action an attack on the merits of the underlying contract award' or the solicitation." (third alteration in original) (quoting *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999))).

granted under the Tucker Act" because such challenges are actions "in connection with" a procurement. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015). A plaintiff, however, must exhaust its administrative remedies (*i.e.*, participate in a size appeal before OHA) "before judicial review of a formal size determination may be sought in a court." 13 C.F.R. § 121.1101; *see also LB & B Assocs. Inc. v. United States*, 68 Fed. Cl. 765, 770 (2005) ("[I]t is clear that this court has jurisdiction over a challenge to an OHA decision. The SBA regulations provide no mechanism for obtaining administrative review of an OHA decision; therefore, no further administrative remedies remain to be exhausted regarding the OHA . . . decision." (citation omitted)).

To establish standing, a plaintiff must demonstrate that it is an "interested party." *Aero Spray*, 156 Fed. Cl. at 559 ("[T]he Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870[,] . . . defines not only this Court's jurisdiction over *what* actions may be brought against the government, but also *who* has standing to pursue them."). An "interested party" is "[1] an actual or prospective bidder or offeror [2] whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2)).

In this case, neither the government nor NWI&T challenges FRP's standing as an "interested party" for the purposes of 28 U.S.C. § 1491(b). Nevertheless, the Court has an independent duty to ascertain whether FRP has standing to pursue its claims. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" (alteration in original) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)); *see also* RCFC 12(h)(3).

The Court concludes that the administrative record clearly identifies FRP as an actual or prospective offeror whose direct economic interest would be affected by the government's intended contract award to NWI&T. *See* AR 4. There is no contrary evidence in the administrative record. Moreover, while this Court once again acknowledges that the parties cannot confer jurisdiction on this Court by agreement or concession, we refuse to ignore that neither the government nor NWI&T challenges FRP's status as an "interested party" pursuant to 28 U.S.C. § 1491(b). The failure to challenge FRP's interested party status here raises the question of how FRP qualifies as an interested party for the purpose of its present action before the Court, but somehow does not qualify as a proper offeror and interested party for the purposes of its size protest and appeal before the SBA area office and OHA — which the central theme of Defendants' argument. The Court suspects that Defendants simply hoped the Court would not notice

the inconsistency, but the fact is that Defendants' omission of any discussion of FRP's standing (as an actual or prospective offeror) *before this Court* is glaring.[7]

In addition, FRP has alleged sufficient facts that, if proven based on the administrative record, demonstrate the requisite prejudice for the purposes of interested party status and jurisdiction. *See Am. Relocation Connections, L.L.C. v. United States*, 789 F. App'x 221, 226 (Fed. Cir. 2019) ("For standing, we presume the party bringing a bid protest will succeed on the merits of its claim and ask whether it has alleged an injury (or prejudice) caused by . . . [an] agency's actions. But once we find that a party has standing, we must turn to the merits of the party's claim and determine whether it can prove it was prejudiced based on the record evidence." (citation omitted)).

## IV.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1491(b)(4), this Court applies the standard of review contained in the Administrative Procedure Act (APA) § 10(e), 5 U.S.C. § 706. *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019). In particular, in accordance with the APA, this Court reviews agency procurement-related decisions to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In applying the APA standard of review, and in reviewing OHA decisions in an action pursuant to 28 U.S.C. § 1491(b), "[t]he Federal Circuit has determined that these same standards of review apply to this court's review of decisions by the SBA." *Straughan Env't, Inc. v. United States*, 135 Fed. Cl. 360, 372 (2017) (citing *Palladian Partners, Inc.*, 783 F.3d at 1254).

Thus, this Court's task is to determine whether the SBA's decision "lacked a rational basis" or "involved a violation of regulation or procedure." *Palladian Partners, Inc.*, 783 F.3d at 1252 (quoting *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010)); *see also Stapp Towing Inc. v. United States*, 34 Fed. Cl. 300, 306 (1995) ("[I]n order to prevail when the SBA in effect is the final agency decisionmaker, . . . a contractor

---

[7] The government asserts a *Blue & Gold* argument that is cursory to the point of bordering on frivolous and that, at a minimum, merges with the government's primary contention that OHA cannot correct FRP's error and thus FRP is out of time and out of luck. *See* Def. MJAR at 22 (noting that FRP "had the opportunity to challenge NWI&T's size status within five business days, but chose not to do so" and arguing that "[t]o permit [FRP]'s challenge to survive would undermine the doctrine of waiver well-established in this Court" (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007))). FRP's complaint, however, does not involve a solicitation challenge and thus *Blue & Gold* is inapposite. *See VS2, LLC v. United States*, 155 Fed. Cl. 738, 754 (2021) ("[A]ll the Federal Circuit did [in *Inserso Corp. v. United States*, 961 F.3d 1343 (Fed. Cir. 2020), and *COMINT Systems Corp. v. United States*, 700 F.3d 1377 (Fed. Cir. 2012)] was shift, until the contract award date, the cut-off for a challenge to a solicitation that would not have been possible prior to the proposal due date."). The government's argument is not well developed or supported, and the Court rejects it.

must establish that the SBA's . . . decision . . . had no rational basis or that, in making the decision, the SBA violated an applicable procurement statute or regulation in a manner prejudicial to the protesting bidder.").

The APA, however, "requires that the agency do more than invoke generic, talismanic deference principles or repeat *ipse dixit*." *Seventh Dimension, LLC v. United States*, -- Fed. Cl. --, 2022 WL 2980491, at *6 (2022) (citing *In re Durance*, 891 F.3d 991, 1000 (Fed. Cir. 2018)); *see also Honeywell Int'l Inc. v. Arkema Inc.*, 939 F.3d 1345, 1348 (Fed. Cir. 2019) (explaining that the APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and that an agency "abuses its discretion if [its] decision . . . involves a record that contains no evidence on which the [agency] could rationally base its decision" (first alteration in original) (quoting 5 U.S.C. § 706(2)(A))); *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 533 (D.D.C. 2016) ("[A]n agency's reasoning is deficient if it is:  (1) based on speculation; (2) mere conjecture and abstract theorizing offered in a vacuum; [or] (3) conclusory[.]" (cleaned up)). This Court will not "simply accept whatever conclusion an agency proffers merely because the conclusion reflects the agency's judgment." *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006).

## V.    DISCUSSION

### A.    Regulatory Background: How the FAR Addresses Offeror and Contractor Identification

#### 1.    Regulatory History

Congress and the FAR Council — the latter of which is comprised of the agencies responsible for issuing and maintaining the government's acquisition system[8] — have

---

[8] *See* FAR 1.103(b) ("The FAR is prepared, issued, and maintained, and the FAR System is prescribed, jointly by the Secretary of Defense, the Administrator of General Services, and the Administrator, National Aeronautics and Space Administration, under their several statutory authorities."); *see also FAR Council Members*, Fed. Acquisition Regul. Council, https://www.acquisition.gov/far-council-members (last updated Aug. 25, 2022); Federal Acquisition Regulation System; Other Procurement Rules and Regulations, 45 Fed. Reg. 48,074, 48,074 (July 17, 1980) (policy letter providing for "a single Federal Acquisition Regulation (FAR) to be issued jointly by GSA, DOD, & NASA pursuant to their respective statutory authorities" and "establish[ing] a FAR Council composed of the principal acquisition officials of the major procuring agencies and chaired by the Administrator of [the Office of Federal Procurement Policy]" with "oversight responsibility for the development of the FAR and for operation of the FAR System"); Introduction to the Unified Agenda of Federal Regulatory and Deregulatory Actions—Fall 2017, 83 Fed. Reg. 1,664, 1,807 (Jan. 12, 2018) ("The FAR Council membership

long been concerned with transparency, accountability, and traceability in federal contracting and spending.[9]  In support of those goals, "[w]eb-based procurement systems are essential for completing certain processes and fulfilling various requirements including, for example, publicizing contracting opportunities, helping to ensure that the government only does business with responsible contractors, capturing subcontracting information, and collecting and maintaining contract award data."  L. Elaine Halchin, Cong. Rsch. Serv., R43111, *Transforming Government Acquisition Systems: Overview and Selected Issues* 1 (2013) ("[B]enefits conferred by the suite of acquisition systems include enhanced efficiency, improved access to information, mitigation of the administrative burden shared by federal employees and contractors, and the timely collection of accurate data.").  Because this case concerns, in part, how the federal government identifies offerors, the Court takes a brief detour to explain the history and operation of the applicable regulatory framework.

At least as early as 1997, the U.S. Department of Defense ("DoD") proposed a rule to require its contractors "be registered in the Central Contractor Registration [('CCR')] or the contract cannot be awarded."  Central Contractor Registration (DFARS Case 97-D005), 62 Fed. Reg. 21,606, 21,6111 (Apr. 25, 1997).[10]  The resulting final rule, amending the Defense Federal Acquisition Regulation Supplement ("DFARS"), was issued on March 31, 1998, and explained that "[t]he rule requires that contractors register on a one-time basis, and confirm on an annual basis that their CCR registration is accurate and complete."  Defense Federal Acquisition Regulation Supplement; Central Contractor Registration, 63 Fed. Reg. 15,316, 15,316 (Mar. 31, 1998) (codified as amended in scattered sections of 48 C.F.R. pts. 204, 212, 252).

As a result of that DoD final rule, DFARS 252.204-7004 defined "CCR database" as "the primary DoD repository for contractor information required for the conduct of business with DoD."  63 Fed. Reg. at 15,317.  The DFARS further defined the "Data Universal Numbering System (DUNS) number" as "the 9-digit number assigned by Dun

---

consists of: The Administrator for Federal Procurement Policy[,] . . . the Secretary of Defense, the Administrator of National Aeronautics and Space[,] and the Administrator of General Services.").

[9] *See, e.g.*, Federal Acquisition Regulation; Unique Identification of Entities Receiving Federal Awards, 80 Fed. Reg. 72,035, 72,035 (Nov. 18, 2015) ("In recent years, legislation has been enacted (e.g., the Federal Funding Accountability and Transparency Act and the Digital Accountability and Transparency Act) that requires expanded identification of entities working with the Government and the development of standards, processes, and policies to better trace Federal dollars from appropriation to final outcomes or results.").

[10] *See also* Defense Federal Acquisition Regulation Supplement; Central Contractor Registration, 62 Fed. Reg. 48,200, 48,200–01 (Sept. 15, 1997) ("The Director of Defense Procurement is proposing to amend the Defense Federal Acquisition Regulation Supplement (DFARS) to require contractor registration in the DoD Central Contractor Registration database prior to award of any contract, basic agreement, basic ordering agreement, or blanket purchase agreement . . . .").

and Bradstreet Information Services to identify unique business entities." *Id.* at 15,317–18 (DFARS 252.204-7004(a)(2) as of March 1998). "Registered in the CCR database" meant "that all mandatory information, including the DUNS number . . . and the corresponding Commercial and Government Entity (CAGE) code, is in the CCR database; the DUNS number and the CAGE code have been validated; and all edits have been successfully completed." *Id.* at 15,318 (DFARS 252.204-7004(a)(4) as of March 1998). The DFARS provided that "[b]y submission of an offer, the offeror acknowledges the requirement that a prospective awardee must be registered in the CCR database *prior to award*, during performance, and through final payment of any contract resulting from this solicitation." *Id.* at 15,318 (emphasis added) (DFARS 252.204-7004(b)(1) as of March 1998). DFARS 204.670-2 defined "Commercial and Government Entity (CAGE) code" as "[a] code assigned by the Defense Logistics Services Center (DLSC) to identify a contractor or manufacturer." Department of Defense Federal Acquisition Regulation Supplement; Contract Reporting, 53 Fed. Reg. 34,090, 34,091 (Sept. 2, 1988); *see also id.* at 34,091–92 (DFARS 204.670-3(b) as of October 1988) ("CAGE [code] is the umbrella term for DoD assigned codes used to identify commercial and government activities. CAGE codes have also been known in the past as Federal Supply Codes for Manufacturers (FSCM), Federal Supply Codes for NonManufacturers (FSCNM), MILSCAP codes, H-4 codes, H-8 codes, or other terms.").

Shortly thereafter, in October 1999, the National Aeronautics and Space Administration ("NASA") followed suit, with a proposed rule to amend the NASA FAR Supplement ("NFS") "to include a requirement for vendors and contractors to register through the DoD [CCR] System." Central Contractor Registration (CCR), 64 Fed. Reg. 54,270, 54,270 (Oct. 6, 1999). NASA's proposed rule noted that "[w]hen a vendor registers in CCR, they are assigned a [CAGE] code, which is the vendor identifier that NASA has chosen for its new accounting software system." *Id.* The CAGE code identified would be used by NASA's finance function "for payment purposes as well as by [the agency's] procurement [function] for other business information such as size standard, company address, tax identification number and DUNS number." *Id.* NASA finalized the rule on August 17, 2000. Central Contractor Registration (CCR), 65 Fed. Reg. 50,152, 50,153 (Aug. 17, 2000) (codified as amended in scattered sections of 48 C.F.R. pts. 1804, 1812, 1852). As a result of that final rule, NFS 1852.204-74 defined "CAGE Code" as "[a] code assigned by the Defense Logistics Information Service (DLIS) to identify a commercial or Government entity." 65 Fed. Reg. at 50,153 (NFS 1852.204-74(a)(4)(i) as of August 2000).

Within approximately three years, the FAR Council proposed to extend the CCR registration requirement to all agencies subject to the FAR. *See* Federal Acquisition Regulation; Central Contractor Registration, 68 Fed. Reg. 16,366 (Apr. 3, 2003). The proposed FAR amendment would "require contractor registration in the [CCR] database prior to award of any contract, basic agreement, basic ordering agreement, or blanket

purchase agreement." *Id.* at 16,366.  The FAR Council explained the rationale for its proposed rule as follows:

> Certain agencies, e.g., DoD, currently require in their regulations that contractors register in the CCR database.  For other agencies, under current FAR regulations, contractors are required to submit the same information to various contracting and payment offices.  Under the proposed rule, contractors are required to provide certain business information, including their Taxpayer Identification Number (TINs) and Electronic Funds Transfer (EFT) information only once into a common Government[-]wide data source. . . . This proposed rule will not create a total electronic commerce environment, but will help provide a basic framework or foundation that will allow migration to a total electronic commerce environment.

68 Fed. Reg. at 16,366.

The final rule, implementing the general requirement to register with CCR, was issued October 1, 2003.  Federal Acquisition Regulation; Central Contractor Registration, 68 Fed. Reg. 56,669 (Oct. 1, 2003) (codified in scattered sections of 48 C.F.R.).  In issuing the final rule, the FAR Council supplemented its explanation for the new rule:

> In an effort to broaden use and reliance upon e-business applications, the [FAR Council is] working with the Office of Federal Procurement Policy to eliminate the need to maintain paper-based sources of contractor information.  The Central Contractor Registration (CCR) System is a centrally located, searchable database, accessible via the Internet to develop, maintain, and provide sources for future procurements.  The CCR data is the most up to date and complete data available.  As a single validated source of data on contractors doing business with the Government, the CCR database enables prospective contractors to update their information in one place via a web site (http://www.CCR.gov).  The information is then available via the Internet.  Contracting officers will now be able to access contractor data and industry information less expensively, and more efficiently identify sources for contracting opportunities.

*Id.* at 56,669.

Pursuant to that new final rule, the FAR was amended in a variety of ways, including to add the following definitions to FAR 2.101:

> *Central Contractor Registration (CCR) database* means the primary Government repository for contractor information required for the conduct of business with the Government.
>
> . . . .
>
> *Data Universal Numbering System (DUNS) number* means the 9-digit number assigned by Dun and Bradstreet, Inc. (D&B), to identify unique business entities.
>
> . . . .
>
> *Registered in the CCR database* means that—
> (1) The contractor has entered all mandatory information, including the DUNS number . . . into the CCR database; and
> (2) The Government has validated mandatory data fields and has marked the record "Active".

*Id.* at 56,672 (FAR 2.101 as of October 2003). In addition, a new FAR clause, FAR 52.204-6 ("Data Universal Numbering System (DUNS) Number"), provided offerors with instructions and guidance on obtaining a DUNS number. *Id.* at 56,674 (FAR 52.204-6 as of October 2003).

The FAR's new CCR registration requirement made the similar DFARS provisions redundant. Accordingly, DoD "remove[d] DFARS text on Central Contractor Registration that ha[d] become obsolete as a result of policy that was added to the FAR, [but] retain[ed] existing requirements for use of [CAGE] codes in DoD contracts." Defense Federal Acquisition Regulation Supplement; Central Contractor Registration, 70 Fed. Reg. 57,188, 57,188 (Sept. 30, 2005) (revising "DFARS 204.1103(e) to clarify that contracting officers must include the contractor's CAGE code on contractual documents transmitted to the payment office, instead of the DUNS number").

In early 2012, the government began planning to "aggregat[e] disparate Federal acquisition content, which [was] housed in numerous online systems, by providing one Web site for regulations, systems, resources, opportunities, and training." Federal Acquisition Regulation; Transition to the System for Award Management (SAM), 77 Fed. Reg. 187, 187 (Jan. 3, 2012). The new central website was called the "System for Award

Management" — now commonly known as "SAM." *Id.* The FAR Council explained the rationale for, and objective of, SAM as follows:

> [The General Services Administration ("GSA")] has . . . consolidat[ed] the Government-wide acquisition and award support systems into SAM. SAM is an information system tool that streamlines the Federal acquisition business processes by acting as a single authoritative data source for vendor, contract award, and reporting information, thereby eliminating the need to enter multiple sites and perform duplicative data entry. SAM consolidates hosting to improve the efficiency of doing business with the Government.

Federal Acquisition Regulation; System for Award Management Name Change, Phase 1 Implementation, 78 Fed. Reg. 37,676, 37,676 (June 21, 2013).

The initial SAM implementation phase began in July 2012, and included "transition[ing] the [CCR database], the Excluded Parties List System (EPLS), and [the] Online Representations and Certifications Application (ORCA) to the new SAM architecture." *Id.* at 37,676;[11] *see also* Defense Federal Acquisition Regulation Supplement; Transition to the System for Award Management (DFARS Case 2011-D053), 76 Fed. Reg. 71,464, 71,464 (Nov. 18, 2011); Defense Federal Acquisition Regulation Supplement: System for Award Management Name Changes, Phase 1 Implementation (DFARS Case 2012-D053), 78 Fed. Reg. 28,756, 28,756 (May 16, 2013). Following SAM's implementation, "the pre-existing procurement systems were retired" and "all requirements for entity registration, representations and certifications, and exclusions are now accomplished via SAM." 78 Fed Reg. at 28,757. The FAR's references to the retired systems were removed, *see id.* at 37,677, and the FAR was amended to substitute a new definition of "[r]egistered in the System for Award Management (SAM) database" for the now-removed definition of "[r]egistered in the CCR database," *id.* In particular, FAR 2.101 was amended to provide:

> *Registered in the System for Award Management (SAM) database*
> means that—
>
> (1) The Contractor has entered all mandatory information, including the DUNS number . . . , the Contractor and Government Entity (CAGE) code, as well as data required

---

[11] "ORCA" was defined as "the primary Government repository for contractor submitted representations and certifications required for the conduct of business with the Government." 77 Fed. Reg. at 187 (revising FAR 2.101).

by the Federal Funding Accountability and Transparency Act of 2006 (see subpart 4.14), into the SAM database;

(2) The Contractor has completed the Core, Assertions, Representations and Certifications, and Points of Contact sections of the registration in the SAM database;

(3) The Government has validated all mandatory data fields, to include validation of the Taxpayer Identification Number (TIN) with the Internal Revenue Service (IRS). The contractor will be required to provide consent for TIN validation to the Government as a part of the SAM registration process; and

(4) The Government has marked the record "Active."

*Id.* (revising FAR 2.101).[12]

In May 2014, the FAR Council issued "a final rule amending the [FAR] to require the use of [CAGE] codes . . . for awards valued at greater than the micro-purchase threshold." Federal Acquisition Regulation; Commercial and Government Entity Code, 79 Fed. Reg. 31,187, 31,187 (May 30, 2014). In particular, the FAR Council "revis[ed] the FAR to require that ***offerors provide their CAGE codes to contracting officers*** and that, if owned by another entity, offerors will provide, in a new provision with their representations and certifications, the CAGE codes and names of such entity or entities." *Id.* (emphasis added). The FAR Council noted that "a CAGE code is assigned as part of the [SAM] registration process" but that if, for whatever reason, "SAM registration is not required, the offeror must request and obtain a CAGE code from the Defense Logistics Agency (DLA) Contractor and Government Entity (CAGE) Branch." *Id.* Thus began the FAR's transition away from its reliance on DUNS numbers and toward the increased importance of CAGE codes (and other nonproprietary identification numbers):

To further the desired increases in traceability and transparency, this rule uses *the unique identification that a CAGE code provides*, coupled with vendor representation of ownership and owner CAGE code. The CAGE code is a five-character alpha-numeric identifier used extensively within

---

[12] Similarly, FAR 4.605(b) was amended to provide that "[t]he contracting officer must identify and report a [DUNS] number . . . for the successful offeror on a contract action" and that "[t]he DUNS number reported must identify the successful offeror's name and address as stated in the offer and resultant contract, and as registered in [SAM]." 78 Fed. Reg. at 37,677 (revising FAR 4.605(b)).

the Federal Government *and will provide for standardization across the Federal Government.*

*Id.* at 31,187 (emphasis added).

The FAR Council explained that "[t]he use of the CAGE code provides *a Government-managed unique identifier* for these entities" and that "the final rule provides a mechanism for the entities themselves to identify their hierarchical structure to the Government." *Id.* at 31,188 (emphasis added).[13]  Indeed, in comparing CAGE codes to DUNS numbers, the FAR Council explained how the former were superior to the latter. *Id.* at 31,189 (explaining that while "[t]here is some corporate linkage in SAM provided by [the DUNS number] . . . , the methodology by which D&B establishes ownership is proprietary and does not necessarily conform to the definitions in [the FAR]" and thus "[t]he final rule instead establishes the use of a Government-managed unique identifier").[14]  Addressing objections to the proposed new CAGE code rules, the FAR Council responded that "[o]btaining a CAGE code is already a requirement for an active registration in SAM and for its predecessors the [ORCA] and the [CCR database]" and, thus, "[t]his final rule does not impose any new burden in that regard."  *Id.* at 31,188.

In March 2016, the FAR Council amended "the [FAR] to implement section 852 of the National Defense Authorization Act (NDAA) for Fiscal Year (FY) 2013 to include in the Federal Awardee Performance and Integrity Information System (FAPIIS), to the extent practicable, identification of any immediate owner or subsidiary, and all predecessors of an offeror that held a Federal contract or grant within the last three years."  Federal Acquisition Regulation; Information on Corporate Contractor Performance and Integrity, 81 Fed. Reg. 11,988, 11,988 (Mar. 7, 2016) ("The objective is to provide a more comprehensive understanding of the performance and integrity of the corporation before awarding a Federal contract.").  That final rule relied upon CAGE codes to trace corporate relationships and history.  *Id.* at 11,990–91.

After elevating the role of CAGE codes, the FAR Council took concrete steps to dispense with the government's reliance on a proprietary contractor identification, issuing a final rule to "eliminate[] [the FAR's] references to the proprietary [DUNS]

---

[13] The CAGE codes serve the same function as DUNS numbers.  *See* Federal Acquisition Regulation; Updates to Contract Reporting and Central Contractor Registration, 76 Fed. Reg. 73,564, 73,565 (Nov. 29, 2011) (noting that "[f]or decades, the DUNS number provided by Dun & Bradstreet (D&B) has been the Federal Government's unique identifier for contractors" and that DUNS numbers are used "(1) [to] [u]niquely identify a contractor entity, and (2) to roll-up Government procurements to the ultimate parent organization to show the corporate family receiving U.S. obligations").

[14] *See generally* L. Elaine Halchin, Cong. Rsch. Serv., R44490, *Unique Identification Codes for Federal Contractors: DUNS Numbers and CAGE Codes* (2017).

number."  Federal Acquisition Regulation; Unique Identification of Entities Receiving Federal Awards, 81 Fed. Reg. 67,736, 67,736 (Sept. 30, 2016).  The ultimate goal was to create a replacement identification code — known as a "unique entity identifier" ("UEI") — that was not proprietary.  *Id.*  This final rule added "unique entity identifier" to the FAR, defining the term as "a number or other identifier used to identify a specific commercial, nonprofit, or Government entity."  *id.* at 67,738.  In that regard, the FAR Council explained that "[u]nique identification of such entities is critical to ensure Federal dollars are awarded to responsible parties, awardees are paid in a timely manner, and awards are appropriately recorded and reported."  *Id.* at 67,737.  While the FAR Council noted that "[t]his is currently accomplished in the FAR by using the proprietary [DUNS] number," *id.*, the Council did not otherwise address "***the unique identification that a CAGE code provides*** . . . for standardization across the Federal Government," Submission for OMB Review; Commercial and Government Entity Code, 79 Fed. Reg. 38,892, 38,893 (July 9, 2014) (emphasis added).  The FAR's various provisions relying upon CAGE codes were thus preserved.  Although the FAR's references to DUNS were eliminated, "the Government [could] not . . . move away from use of the DUNS number in the short term." 81 Fed. Reg. at 67,737.[15]

In September 2018, the FAR Council issued a final rule "to update the instructions for registration in [SAM] and correct an inconsistency involving the timing of registration."   Federal Acquisition Regulation: System for Award Management Registration, 83 Fed. Reg. 48,691, 48,691 (Sept. 26, 2018).  The new rule clarified that "all offerors (except as provided at FAR 4.1102) [must] be registered in SAM at the time of submission of an offer or quotation, consistent with the requirements of FAR clause 52.204-8."  *Id.* ("[T]his rulemaking effort does not create a new requirement for offerors, large or small.  The purpose of this rule is to clarify for offerors the required timing of SAM registration, i.e., when should offerors register in SAM.").[16]  The final rule further noted:

> Once a business, including a small business, is registered in
> SAM, there is an annual renewal requirement to update the
> annual representations and certifications, and a requirement

---

[15] *See also* Unique Entity ID Standard for Awards Management, 84 Fed. Reg. 32,916, 32,916–17 (July 10, 2019) ("In 2016, the government revised both the [FAR] and Title 2 of the Code of Federal Regulations (2 CFR) to remove any proprietary references to D&B and the DUNS[] number as the unique entity identifier.  This allowed the government to decouple the required unique identifier from the supporting entity validation services. . . . [DUNS] will be phased out as the entity identifier for entity record within SAM.").

[16] *See also* 83 Fed. Reg. at 48,692 ("As previously stated, this rule does not impose a new requirement and is therefore not an impediment for businesses, because registration in SAM at time of offer submission is already required by FAR provision 52.204-8(b) and (d), if the provision FAR 52.204-7 is in the solicitation.")

> for entities to update throughout the year only if an entity's
> information has changed.  This eliminates the need for
> potential offerors to complete full representations and
> certifications on paper multiple times a year when
> responding to multiple solicitations.

*Id.* at 48,694.[17]

Finally, "[a]s of April 4, 2022, SAM has transitioned from the DUNS number to a nonproprietary Unique Entity Identifier (UEI) obtained through SAM.gov."  Assistance to Firefighters Grant Program; Fire Prevention and Safety Grants, 87 Fed. Reg. 29,164, 29,169 (May 12, 2022).  As a result, "entities doing business with the federal government use the Unique Entity ID created in SAM.gov" and "no longer have to go to a third-party website to obtain their identifier."[18]  The transition from DUNS numbers to UEI numbers, however, "does not impact the CAGE" codes because they "are separate identifiers."[19]

## 2.  Summary of Current SAM Registration Rules

The FAR defines CAGE code as "[a]n identifier assigned to entities located in the United States or its outlying areas by the Defense Logistics Agency (DLA) Commercial and Government Entity (CAGE) Branch to identify a commercial or government entity by unique location."  FAR 2.101.  The FAR defines "[u]nique entity identifier [as] a

---

[17] Over the past several years, the government expanded SAM to include additional procurement-related systems.  *See* Federal Acquisition Regulation: Update to Certain Online References in the FAR, 86 Fed. Reg. 71,323, 71,324 (Dec. 15, 2021) ("[SAM] . . . continues to evolve to incorporate the capabilities of other systems used in Federal procurement processes."); *About SAM.gov*, U.S. Gen. Servs. Admin., https://www.gsa.gov/about-us/organization/federal-acquisition-service/office-of-systems-management/integrated-award-environment-iae/about-samgov (last reviewed Apr. 1, 2022) ("[M]ultiple online systems, including [SAM,] . . . are used for registering to do business with the federal government, listing contract opportunities, capturing contractor performance, viewing contract data, searching assistance listings, reporting subcontracts, and more.").

[18] *Unique Entity Identifier Update*, U.S. Gen. Servs. Admin., https://www.gsa.gov/about-us/organization/federal-acquisition-service/office-of-systems-management/integrated-award-environment-iae/iae-systems-information-kit/unique-entity-identifier-update (last reviewed June 2, 2022).

[19] U.S. Gen. Servs. Admin., *Unique Entity ID (SAM) Frequently Asked Questions* 8, https://www.gsa.gov/cdnstatic/To_Publish_-_FAQs_from_Unique_Entity_ID_Forum.pdf (last visited Sept. 9, 2022); *Unique Entity ID Is Here*, U.S. Gen. Servs. Admin., https://www.gsa.gov/about-us/organization/federal-acquisition-service/office-of-systems-management/integrated-award-environment-iae/iae-systems-information-kit/unique-entity-id-is-here (last reviewed Apr. 2, 2022) ("The DUNS Number is no longer valid for federal award identification.").

number or other identifier used to identify a specific commercial, nonprofit, or Government entity." *Id.* Although the FAR no longer contains references to DUNS numbers, as discussed *supra*, the CAGE code remains as a unique identifier. *See* FAR 4.1800(a)(2) ("The [CAGE] code system may be used, among other things, to . . . [e]xchange data with another system that requires *the unique identification of a contractor entity . . . .*" (emphasis added)).

With limited exceptions not relevant here, "[o]fferors and quoters are required to be registered in SAM ***at the time an offer or quotation is submitted*** in order to comply with the annual representations and certifications requirements." FAR 4.1102(a) (emphasis added). SAM, as explained at length above, is "the primary Government repository for prospective Federal awardee and Federal awardee information and the centralized Government system for certain contracting, grants, and other assistance-related processes." FAR 2.101 (defining "System for Award Management"). When offerors register in SAM, they "are required to complete electronic annual representations and certifications." FAR 4.1201(a) (cross-referencing FAR 4.1102).[20]

Contracting officers are generally required to "verify that the offeror or quoter is registered in SAM . . . at the time an offer or quotation is submitted." FAR 4.1103(a)(1); *see also* FAR 2.101 (defining the term "Registered in the System for Award Management" to include the entry of both a UEI and CAGE code); FAR 52.204-7 ("System for Award Management"). An offeror must include its UEI in any offer "that identifies the Offeror's name and address exactly as stated in the offer." FAR 52.204-7(b)(2). The FAR advises that contracting officers "[s]hould use the unique entity identifier to verify SAM registration." FAR 4.1103(a)(2). *But see* FAR 52.204-7(b)(2) ("The [UEI] *will* be used by the Contracting Officer to verify that the Offeror is registered in the SAM." (emphasis added)).

An offeror must also generally provide its CAGE code to the cognizant contracting officer *prior to award*. *See* FAR 4.1802(a)(1) ("Commercial and Government Entity code") ("Offerors shall provide the contracting officer the CAGE code . . . when there is a requirement to be registered in [SAM] or a requirement to have a unique entity identifier in the solicitation."); FAR 52.204-16(b) (requiring that an offeror "provide its CAGE code with its offer with its name and location address or otherwise include it prominently in its proposal" and that "[t]he CAGE code is required prior to award").

The FAR further mandates that "[c]ontracting officers shall use the legal business name or 'doing business as' name and physical address from the contractor's SAM registration for the provided unique entity identifier to identify the contractor in section A of the contract schedule, . . . and [for] all corresponding forms and data

---

[20] The contracting officer then must "incorporate the representations and certifications by reference in [an awarded] contract." FAR 4.1201(d).

exchanges."  FAR 4.1102(c) (instructing "[c]ontracting officers shall make no changes to the data retrieved from SAM.").  The contracting officer must also "include the contractor's CAGE code in the contract and in any electronic transmissions of the contract data to other systems."  FAR 4.1802(a)(2).  The CAGE code is used for the government to identify and track ownership or control of an offeror.  *See* FAR 4.1802(b).

Not only must an offeror "be registered in SAM when submitting an offer," it must "continue to be registered until time of award, during performance, and through final payment of any contract."  FAR 52.204-7(b)(1); *see also* FAR 52.204-13(c).  All SAM "registrants are required to review and update the representations and certifications submitted to SAM as necessary, but at least annually, to ensure they are kept current, accurate, and complete."  FAR 4.1201(b)(1).  This yearly review requirement extends to all SAM information *for contractors*, but perhaps not to mere offerors or SAM registrants generally.  *See* FAR 52.204-13(c) ("System for Award Management Maintenance") ("To remain registered in SAM after the initial registration, *the Contractor* is required to review and update on an annual basis, from the date of initial registration or subsequent updates, its information in SAM to ensure it is current, accurate and complete." (emphasis added)).[21]  Contracting officers must "verify [an] offeror's CAGE code by reviewing the entity's registration in [SAM]" prior to award, but an active SAM registration means that a CAGE code has been verified.  FAR 4.1803(a) ("Verifying CAGE codes prior to award").

## B. OHA's Decision Denying FRP's Motion to Amend its Pleadings and Dismissing FRP's Size Appeal Was Arbitrary, Capricious, and Otherwise Contrary to Law

### 1. OHA Improperly Disregarded That FEMA Identified FRP as Both an Offeror and the Size Protestor and That FRP is the Real Party-in-Interest

The question this Court must answer is whether OHA's decision — namely, denying FRP's motion to amend the caption of its size appeal to reflect FRP's correct name — was arbitrary, capricious, or otherwise contrary to law.  This Court answers that question in the affirmative.  The central facts and rationale supporting the Court's conclusion are straightforward:  (1) FRP had an active SAM registration and was an actual offeror for the procurement at issue; (2) although FRP mistakenly filed its size protest using the incorrect corporate name, neither FEMA nor the SBA nor NWI&T were confused or prejudiced by FRP's error;[22] (3) at all times, FRP was the true protestor and party-in-interest; and (4) no SBA regulation precluded the simple correction FRP sought, which, in any event, would not have prejudiced any party.

---

[21] There are FAR requirements governing changes to SAM registrations arising from a novation or change-of-name agreement, but those requirements also apply only to contractors, not offerors. *See, e.g.*, FAR 4.1102(d)(1); FAR 52.204-13(d); FAR 52.204-18(b) (for CAGE codes).

[22] *See* Tr. 42:9–10 (government conceding that "[t]here's no evidence of confusion").

The question of "[w]ho may initiate a size protest" is governed by an SBA regulation, which provides for a size protest by "[a]ny *offeror* that the contracting officer has not eliminated from consideration for any procurement-related reason, such as non-responsiveness, technical unacceptability or outside of the competitive range." 13 C.F.R. § 121.1001(a)(1)(i) (emphasis added). The administrative record demonstrates — and the parties do not point to any evidence undermining — that FRP was an actual offeror. Indeed, on September 15, 2021, the cognizant FEMA contracting officer transmitted a pre-award notice to FRP, informing it that "[t]he Government will award a contract to the following successful offeror in response to the subject solicitation" — indicating the selected awardee was NWI&T. AR 300. The contracting officer further informed FRP that further "response is not required unless a basis exists to challenge the size status, or small business status, of the successful offeror listed above" — *i.e.*, NWI&T. AR 300. FRP was "not eliminated from consideration for any procurement-related reason." 13 C.F.R. § 121.1001(a)(1)(i).

Moreover, there is no dispute that FRP is registered in SAM. AR 2548.[23] FRP's UEI[24] is MLP1RM8SEMW5 and its CAGE code is 8RY22, both of which serve as unique identifiers. AR 2548.[25] The Court presumes that the FEMA contracting officer verified this information, as required, and there is no indication in the administrative record that the contracting officer was confused, misled, or otherwise determined that FRP's SAM entry was somehow disqualifying. *See* FAR 4.1103(a)(1) ("[T]he contracting officer . . . [s]hall verify that the offeror or quoter is registered in SAM . . . at the time an offer or quotation is submitted[.]"). "'In the absence of clear evidence to the contrary,' the presumption of regularity allows courts to presume that 'public officers have properly discharged their official duties.'" *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1382 (Fed. Cir. 2018) (quoting *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001)).

Although FRP's size protest referred to itself, in error, as "Focus Revision Partners JV, LLC," AR 6, there is no evidence whatsoever that such an entity exists — whether as an unregistered, informal joint venture or as a registered corporate entity with a

---

[23] The Court performed its own search of the SAM database and takes judicial notice of the results. *CliniComp Int'l, Inc. v. United States*, 134 Fed. Cl. 736, 749 (2017) (acknowledging that the Court may take judicial notice of "matters of public record" that are "not subject to reasonable dispute" in its consideration of the parties' respective cross-motions for judgment on the administrative record (citing Fed. R. Evid. 201)), *aff'd*, 904 F.3d 1353 (Fed. Cir. 2018). Nothing in the administrative record conflicts with those results. *See, e.g.*, AR 2548–49.

[24] *See* FAR 4.605(b) (requiring a "contracting officer [to] identify and report a unique entity identifier for the successful offeror on a contract action" and providing that "[t]he unique entity identifier shall correspond to the successful offeror's name and address as stated in the offer and resultant contract, and as registered in the System for Award Management").

[25] *See* 79 Fed. Reg. at 31,188 ("The use of the CAGE code provides a Government-managed unique identifier for these entities . . . .").

particular state.  Nor is there a SAM record of any such entity.[26]  In any event, FRP's size protest asserted that "FRP is an interested party for purposes of this size protest *because it was an actual offeror under the Solicitation* and was not eliminated for procurement-related reasons."  AR 7 (emphasis added) (citing 13 C.F.R. § 121.1001(a)(1)(i)); *see also* AR 8 ("FRP is a small business that timely submitted a package in response to the . . . Solicitation.  On September 15, 2021, FRP was notified that [NWI&T] was identified as the apparent successful offeror.").  In describing itself as "an actual offeror," the protestor clearly intended to refer to itself — FRP, the entity registered in SAM that submitted an offer in response to the Solicitation.

The FEMA contracting officer was not at all confused regarding the identity of FRP as an actual offeror and the size protestor in this case.  We know that is true because the contracting officer transmitted FRP's size protest via email to an SBA official, as required, with the following background information: "On September 17, 2021, FEMA received notice, via email to the Contracting Officer, Jason Morgan, that ***Focus Revision Partners, one of the unsuccessful offerors***, is formally protesting the small business size of the apparent successful offeror, NWI&T Atkins SB JV, LLC."  AR 2 (emphasis added).  That identical sentence is repeated in FEMA's formal size protest referral letter.  AR 4 (FEMA Referral Letter to SBA); *cf.* ECF No. 18 at 3 (AR index identifying "AR 4" as "Referral Letter").  The next page of the referral letter separately references the "Size Protest from Focus Revision Partners, dated September 17, 2021 (269 pages total)."  AR 5.  FEMA thus referenced FRP as the size protestor no fewer than three separate times and each time correctly referenced its name as Focus Revision Partners — the plaintiff in this case.  Conversely, FEMA did not once refer to the protestor as "Focus Revision Partners JV, LLC."[27]

In a similar vein, although the SBA notified NWI&T (on September 20, 2021) of FRP's size protest and identified the protestor as "Focus Revision Partners JV, LLC," *see* AR 912, NWI&T failed to seek its dismissal, notwithstanding that a quick SAM search would have revealed that an entity named "Focus Revision Partners JV, LLC" could not have been an offeror on the subject procurement because no such entity is registered in SAM.

In any event, there can be no debate that Focus Revision Partners, the entity registered in SAM, qualifies as an "offeror" pursuant to 13 C.F.R. § 121.1001(a)(1)(i) with

---

[26] *See* discussion *supra* Section V.A.

[27] The Court rejects, as a factual matter, the government's contention that "[w]e don't know . . . who actually submitted the offer or the response to the [S]olicitation."  Tr. 36:12–16.  Indeed, the government concedes that there is "evidence in the record" supporting the Court's conclusion.  Tr. 36:25, 37:1–2.

standing to appeal an adverse size decision to OHA pursuant to 13 C.F.R. § 134.302(a).[28] Accordingly, and as discussed in further detail below, the central question for this Court reduces to whether OHA erred in refusing to correct the caption of the size appeal at issue to reflect that FRP — as the real party-in-interest — was the correct name of the offeror, protestor, and appellant in the size appeal.

This Court once again notes that it reviews OHA's decision to determine whether it was arbitrary, capricious, or otherwise contrary to law, but OHA's reasoning is sparse to say the least. Although OHA acknowledged that FRP both received a pre-award notice that it was an unsuccessful offeror and identified itself as an actual offeror under the Solicitation that was not eliminated for procurement-related reasons, AR 2582–83, OHA dismissed the size appeal at issue for two, nearly identical, reasons. First, OHA concluded that "by Appellant's own admission, . . . 'Focus Revision Partners JV LLC' . . . simply does not exist" and that "admission is largely fatal for Appellant because a non-existent entity plainly lacks standing to protest or to appeal." AR 2586.[29] According to OHA, because Focus Revision Partners JV, LLC, is non-existent, it "thus was not an actual offeror on the subject procurement" and, accordingly, "lacked standing to protest." AR 2587 (holding that, for the same reason, Appellant "lacks standing to appeal"). Second, OHA reasoned that "[l]ogically, since Appellant lacked standing to have filed the initial appeal, Appellant also lacks standing to later amend that appeal." AR 2587.

The Court finds this reasoning anything but logical.

"In this case," as in so many others, "framing is everything." *Byrd v. Haas*, 17 F.4th 692, 696 (6th Cir. 2021). Again, the correct question here is not whether a non-existent entity can file and maintain a size protest or appeal — of course that would be silly — but rather whether the real party-in-interest may correct its error (*i.e.*, in a caption and pleadings) to reflect its actual name. OHA's conclusion that a non-existent entity does not have standing to protest or appeal merely begs the question whether the correct entity — again, the real party-in-interest — is entitled to remedy its appellation error,

_____

[28] The SBA's rules permit "[a]ny offeror that the contracting officer has not eliminated from consideration for any procurement-related reason" to submit a size protest through the contracting officer to the applicable area office. 13 C.F.R. § 121.1001(a)(1)(i). "This means an offeror does not have to be the next low bidder that would benefit if the protested concern is found to be other than small by an area office." *B&M Constr., Inc.*, SBA No. SIZ-4805, 2006 WL 2811254, at *10 (Aug. 11, 2006).

[29] The Court notes that the although the OHA decision repeatedly refers to the size appellant as "Focus Revision Partners JV LLC" — *i.e.*, without a comma — the erroneous (non-existent) name is actually "Focus Revision Partners JV, LLC," with a comma after JV. *Compare* AR 2587 (noting that "'Focus Revision Partners JV LLC', is non-existent"), *with* AR 2583 (noting that "Appellant's protest was filed in the name of 'Focus Revision Partners JV, LLC'"). The admittedly minor typographical error is more than a little ironic given OHA's take on this case.

particularly where there is no evidence (or even an allegation) that another party would suffer any prejudice as a result.

OHA's reasoning that an incorrectly named party lacks standing and thus cannot correct its name is nearly circular. OHA's answer to the question of whether the real party-in-interest may correct its naming error is smuggled into OHA's premise, which, in essence, is that once the appellant's name is wrong, there is no available fix.

Counsel for FRP in this case, however, do not represent a ghostly apparition, and FRP is not a figment of the contracting officer's imagination. We repeat: FEMA's own contracting officer identified FRP as an actual offeror and the size protestor here. *See* AR 4 (FEMA Referral Letter to SBA) ("FEMA received notice, via email to the Contracting Officer, . . . that Focus Revision Partners, *one of the unsuccessful offerors*, is formally protesting the small business size of the apparent successful offeror, NWI&T Atkins SB JV, LLC." (emphasis added)); AR 2 (FEMA Email to SBA dated Sept. 17, 2021) (same); AR 5 ("Size Protest *from Focus Revision Partners*, dated September 17, 2021" (emphasis added)). Again, finding that a (misnamed) appellant does not exist[30] merely begs the question whether there is a real party-in-interest capable of correcting the error. *Cf. Marubeni Am. Corp. v. United States*, 114 F.3d 202, 204 (Fed. Cir. 1997) ("The government's question-begging definition is untenable."). Put differently, the fact that a non-existent party, by definition, cannot maintain a size protest, a size appeal, or an action or appeal in federal court, does not lead ineluctably either to the conclusion that there is *no* real party-in-interest or to the conclusion that the real party-in-interest itself lacks standing to seek a correction. OHA's conception of standing — and the real party-in-interest — is wrong. *See Mitchell Food Prods, Inc. v. United States*, 43 F. App'x 369, 369–70 (Fed. Cir. 2002) (explaining that "[s]tanding and real party in interest are two distinct concepts" and that "[r]eal party in interest, unlike standing, is not jurisdictional");[31] *see also* discussion *supra* Section V.A.2.

Accordingly, the Court concludes that OHA improperly determined that it lacked jurisdiction or any discretion to permit the correction FRP sought. OHA's decision is unsupported by the factual record and is thus arbitrary and capricious. *See Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 24 (2022) ("The APA's standard of review requires more than mere assumptions, hypotheses, and guesses — it requires reasonable conclusions based on facts or other record evidence." (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))); *see also Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (holding that under the arbitrary and capricious standard of

---

[30] *See* Tr. 12:3–10 (government conceding that "[t]here is no counterevidence in the record" refuting that the misnamed appellant does not exist).

[31] The government acknowledges that federal concepts of jurisdiction and standing — and, by implication, real party-in-interest — apply in administrative proceedings. *See* Def. Reply at 4.

review, an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the *facts* found and the choice made'" (emphasis added) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))).  OHA's decision is also erroneous as a matter of law.

The Court's conclusion is supported by binding precedent admonishing that "[t]he law should, when possible, reflect a common sense logic."  *Tri-State Materials Corp. v. United States*, 550 F.2d 1, 7 (Ct. Cl. 1977).  For this Court to endorse the OHA decision at issue would "def[y] common sense" and "glorify a semantical distinction . . . to promote form over substance, and academics over common sense."  *Id.; cf. SCOA Indus., Inc. v. Kennedy & Cohen, Inc.*, 530 F.2d 953, 955 (C.C.P.A. 1976) ("Justice requires that pleadings and motions be construed with a view to the substance of the matters presented therein. Decisions based on technicalities such as the caption on a motion will be avoided if the court can comprehend the basis of the motion and deal with it fairly."); *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) ("The [law] reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002))); *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 437 (6th Cir. 2006) (holding party had adequate notice "despite its technical deficiency" and that a party's "fail[ure] to object to the adequacy of the notice until trial . . . estopped [it] from raising the insufficiency of notice" and that concluding otherwise improperly "would elevate form over substance"); *Mitchell v. United States*, 141 F.3d 8, 21 (1st Cir. 1998) (modifying judgment *on appeal* to correct plaintiff's name, an "error [that] is easily corrected," because "[t]o hold otherwise would elevate form over substance" (quoting *Santos v. Lumbermens Mut. Cas. Co.*, 556 N.E.2d 983, 988 (Mass. 1990))).[32]

OHA further reasoned that "*even if* OHA were to *interpret* [13 C.F.R.] § 134.207(a) as enabling Appellant to substitute the name of a different entity as the real party in interest for appeal purposes," OHA would have rejected FRP's request because "the fact would remain that Appellant's protest too was filed in the name of an entity without standing."  AR 2587–78 (emphasis added) (asserting that OHA "has no mechanism to

---

[32] To be clear, the necessary implication of Defendants' position is that a mere clerical error cannot be corrected.  *See* Tr. 21:2–4 (government arguing that "even if [the Court] were to accept that it was a clerical error, I don't think that changes the result").  Incredibly, the government also admits that a correction would be proper "perhaps" for "a one-time occurrence." Tr. 29:25, 30:1–3.  The government, however, cites no authority for distinguishing the correctability of different clerical errors based on their frequency in a set of filings.  More troubling still, the government agrees that, based on its logic, even a mere typographical error could be fatal.  Tr. 41:5–8 (government agreeing there is no "difference between a typographical error and a clerical error"); *see* Tr. 33:22–25, 34:1–8.

permit retroactive amendments to a size protest").[33]  The referenced OHA regulation provides that "[u]pon motion (see [13 C.F.R.] § 134.211), and under terms needed to avoid prejudice to any non-moving party, the [OHA] Judge may permit the filing and service of amendments to pleadings." 13 C.F.R. § 134.207(a) ("Amendments").  An amendment, however, "will not be permitted if it would cause unreasonable delay in the determination of the matter." *Id.*

OHA plainly had discretion pursuant to 13 C.F.R. § 134.207(a) to grant FRP's motion to amend and OHA's failure to exercise that discretion was arbitrary and capricious.  First, there is no dispute that FRP sought to amend its pleadings based upon that regulation.  *See* AR 2451 (FRP OHA Motion to Amend) ("Focus Revision Partners moves to amend its appeal under 13 C.F.R. § 134.207(a).").  Second, there is no text in that regulation that can remotely be read as precluding a name correction to reflect the real party-in-interest.[34]  Where, as here, there is no evidence in the administrative record of any "prejudice to any non-moving party" and no suggestion that any "unreasonable delay" would result from the correction FRP sought, OHA's refusal to make the correction was arbitrary and capricious.  That is particularly true given that the result of OHA's decision was to deny FRP a decision on the merits of its size appeal.  *See Barlovento, LLC*, SBA No. SIZ-5191, 2011 WL 1168300, at *2 n.3 (Feb. 3, 2011) (granting appellant's motion to file amended appeal petition pursuant to 13 C.F.R. § 134.207(a) "[b]ecause the amended appeal did not improperly expand the issues or result in undue delay or prejudice to any party"); *cf. Vari-Form Servs., Inc.*, SBA No. MSB-574, 1997 WL 375415, at *4 (June 30, 1997) (rejecting an "SBA[] objection" as "technical and frivolous"); *Turner Constr. Co.*, ASBCA No. 25447, 83-1 BCA ¶ 16,147, 1982 WL 9358 ("The motion to dismiss is denied and the style of this appeal is changed to reflect the real party in interest."); *Jardineria Iglesias, S.L.*, ASBCA No. 42967, 93-3 BCA ¶ 26,244, 1993 WL 289895 (concluding that "appellant may amend its notice of appeal and complaint to reflect the actual name of the contractor," even though the "Board rules do not specifically mention correction of a misnomer in a pleading as a ground for amending a pleading," because "the established practice under Rule 15 of the Federal Rules of Civil Procedure permits amendment to correct a misnomer of a party to the action and provides suitable authority to deny respondent's motion [to dismiss] and to grant appellant's alternative motion to amend").

---

[33] The government cites no regulation supporting its contention that a retroactive amendment to FRP's size protest is necessary where FRP was the real party-in-interest both before the SBA area office and on appeal to OHA.

[34] *See* Tr. 7:3–20 (government could not identify a "specific regulation" supporting its argument that OHA's practice precludes a name correction); Tr. 9:2–3 (government counsel responding that he does not "believe there's a regulation that precludes" a name correction); Tr. 110:2–4 (government agreeing that "there was no per se rule that prohibited" OHA from amending pleadings to correct a party naming error).

OHA's — and Defendants' — reliance on *Conrad Shipyard, LLC*, SBA No. SIZ-5873, 2017 WL 7311841 (Dec. 8, 2017), is misplaced. In *Conrad Shipyard*, OHA affirmed an area office's denial of the appellant's motion to amend its protest to change the name in the caption to reflect that of the parent company, the real party-in-interest. *Id.* at *1. Although the parent company, Conrad Shipyard, LLC, was an offeror eligible to protest the size status of another offeror in the procurement at issue, its subsidiary, Conrad Orange Shipyard, Inc., and not Conrad Shipyard, LLC, was named as the protestor in the size protest. *Id.* at *1–2. The SBA area office denied the appellant's request to amend the protest to reflect Conrad Shipyard, LLC as the protestor, finding that "[a]n amendment cannot be made to change the protestor outside of the five-day window." *Id.* at *2. The appellant appealed to OHA, arguing that its request to amend "was not an attempt to 'change the protestor outside of the five-day protest window', but was instead the correction of a minor, clerical error." *Id.* OHA affirmed the area office's decision, concluding that (1) "protestors are not permitted to amend protests [before the SBA area office] after the filing deadline," and (2) the *subsidiary* lacked standing to appeal because it was not the offeror for the subject procurement and would not be contracting with the government. *Id.* at *7.

Thus, *Conrad Shipyard* involved an appellant's attempt to substitute *a separate entity*, namely, a parent company for a subsidiary, and is distinguishable from the present situation. As discussed, *there is no separate entity here* — FRP is not attempting "to substitute the name of a different entity as the real party in interest for appeal purposes," as OHA hypothesizes. AR 2588.[35] FRP merely appended the incorrect corporate designation to its name. Moreover, as discussed *infra* Section V.B.2, FRP's corporate status is immaterial and has no bearing on the outcome of the size protest or its status as an offeror. Indeed, Defendants have "adduced no evidence that the *entity* bringing this suit . . . would change following the proposed amendment of the complaint." *Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345, 348 (E.D. Mich. 2003) ("Here, the substitution of Hilgraeve, Inc. for Hilgraeve Corporation would merely correct a technical error in the complaint. Moreover, the proposed amendment would result in no substantive change to the complaint. There is no evidence that the entity known as Hilgraeve, Inc. has not existed throughout this litigation. Counsel for Plaintiff merely misstated a portion of its client's name in the complaint, an error which was likely derived from the patent assignment document. While such technical errors are not to be encouraged, the dismissal of Plaintiff's suit on these grounds would constitute an injustice.").

---

[35] The government could not point to any evidence in the record showing that Focus Revision Partners JV, LLC exists or that "it's a parent, subsidiary, sister, affiliate, or subcontractor" of FRP, the entity registered in SAM. Tr. 37:18–20.

This Court previously has recognized that "[a] little common sense goes a long way to show that the [pleading] contains a mere misnomer,"[36] such that we have no difficulty recognizing that FRP and Focus Revision Partners JV, LLC "are one and the same." *Hemphill Contracting Co. v. United States*, 34 Fed. Cl. 82, 86 (1995).  As then-Chief Judge Smith opined in *Hemphill Contracting Co. v. United States*:

> The court finds it difficult to believe that plaintiff would intentionally misname itself on the complaint, knowing that [the company] did not exist.  Perhaps counsel for plaintiff made an inadvertent technical error.  It is unlikely that plaintiff intentionally misnamed itself in the complaint because, as is evident from the . . . motion to dismiss, the mistake could only hurt plaintiff. . . . There is a strong judicial policy toward merit-based decisions, and against throwing out claims because of a minor technicality.

*Id.*  As in *Hemphill* and *Hilgraeve*, it is abundantly clear that FRP's misnaming itself in the case caption was nothing more than a mistake.  Moreover, "[t]he claims asserted in the [pleadings] are real; it is clear that *some party* possesses the substantive right to [protest] here," and "[i]t is equally clear that no other corporate entity, other than [the plaintiff], could possess this right."  *Id.* at 85; *see also Alart Assocs., Inc. v. Aptaker*, 279 F. Supp. 268, 269–70 (S.D.N.Y. 1968) (denying the defendant's motion to dismiss, and affirming its decision to allow the plaintiff to correct its name in its complaint, because (1) the misidentified copyright claimant was sufficiently close to the plaintiff's true name, (2) the mistakenly identified entity was a "non-existent corporation," and (3) there was no evidence of prejudice to the defendant or the public as a result of the error).

As Justice Black once observed, "[t]he principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts."  Order Adopting Revised Rules of the Supreme Court of United States, 346 U.S. 945, 946 (1954), *quoted in Schiavone v. Fortune*, 477 U.S. 21, 27 (1986).  That rationale applies with equal force to the procedural rules of administrative tribunals.  Thus, while "[i]t is true that the amendment of process and pleadings is a matter resting in the discretion of [a tribunal] . . . the discretion thus vested is a sound discretion to be exercised, not arbitrarily, but in accordance with accepted legal principles."  *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 874 (4th Cir. 1947).  Here, however, as discussed *supra*, "[i]t is clear . . . that the denial of amendment was based . . . not on an exercise of discretion but on the erroneous view that the [tribunal]

---

[36] A "misnomer" is "nothing more than a party . . . styled in other than his or her correct name." 59 Am. Jur. 2d *Parties* § 344 (2022).  "When the correct party is designated in the pleadings in a way that may be inaccurate but that is still sufficient for identification purposes, the misdesignation is a 'misnomer.'"  *Id.*

had no discretion to permit the amendment but was required to deny it as a matter of law." *Id.*

The Court further concludes that Defendants are incorrect in their assertion that the Federal Rules of Civil Procedure ("FRCP") "have no application before SBA OHA." Intv. MJAR at 29; Def. MJAR at 21 (noting that FRP's "reliance" on the FRCP is "misplaced" because the FRCP are "not applicable" to SBA size protests (quoting *Conrad Shipyard*, SBA No. SIZ-5873, at *6)). While OHA is not bound *per se* by the FRCP, OHA's established practice is to consider them. *See, e.g.*, *McDougal Timber & Consulting*, SBA No. 3259, 1990 WL 181810, at *4 (Feb. 20, 1990) ("While we have not adopted the Federal Rules of Civil Procedure, we note that in [another size appeal], we relied upon Rule 36 of the Federal Rules of Civil Procedure regarding a request for admissions.  Thus, we have relied upon those rules in the past, and there is precedent for their use as a guide in [OHA's] proceedings."); *United Food Servs., Inc.*, SBA No. 1931, 1984 WL 41875, at *2, *4 (Apr. 16, 1984) ("The phrase 'decisional significance' has not been defined or construed by either the Small Business Administration's regulations or legislative history or other statutes, regulations, or case law.  Consequently, an analysis of the previous SBA regulations and similar Federal procedures is appropriate. . . . Although the size appeal process is not as formalized as the federal system, the goals and policies for the reopening of a decision, or granting a new trial are the same . . . . Consequently, it is reasonable to conclude that the phrase 'decisional significance' can be defined based on Federal Rules of Procedure 59(a) and 60(b)(2), federal precedent . . . , and on the Board's precedent."); *Vari-Form Servs., Inc.*, 1997 WL 375415, at *2 ("The SBA argues that, because there are no SBA cases that address this issue, I should consider federal case law interpreting the service by mail provisions found in the Federal Rules of Civil Procedure.  I agree."); *White Hawk/Todd, A Joint Venture*, SBA No. SIZ-4968, 2008 WL 2958386, at *5 (June 17, 2008) (relying on FRCP 12(b)(1) in determining whether OHA has subject-matter jurisdiction); *J.E. McAmis, Inc.*, SBA No. 3008, 1988 WL 219905, at *3 (Nov. 25, 1988) (noting that "the propounding of interrogatories and the serving of requests for admissions and for the production of documents" is conducted "*in accordance with the Federal Rules of Civil Procedure* and the Federal Rules of Evidence" (emphasis added)); *Dolphin Indus., Inc.*, SBA No. BDP-135, 2000 WL 1648899, at *1 (Oct. 25, 2000) ("Summary decision in an SBA appeal is similar to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. . . . Accordingly, Rule 56 case law will be applied in deciding this motion." (footnote omitted)).  OHA's failure to do so here was arbitrary and capricious, particularly insofar as OHA dismissed the size appeal at issue on standing grounds.

Elementary rules of federal civil procedure support this Court's conclusion that OHA erred in denying FRP's motion to amend.  It is universally recognized that "[s]tatutes and rules authorizing amendments as to parties should be liberally construed in furtherance of trial upon the merits and to fulfill their clearly defined intent to prevent a defeat of justice through a mere mistake."  59 Am. Jur. 2d *Parties* § 380 (2022); *see also, e.g.*, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1327 (Fed. Cir. 1998) ("The liberal pleading

requirements of the Federal Rules encourage the grant of leave to amend, unless such amendment would not cure the flaw in the pleadings." (citation omitted)); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."); *Staren v. Am. Nat. Bank & Tr. Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976) ("It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems.").

One application of the foregoing principles is that federal courts have permitted parties (and plaintiffs, in particular) to fix misnomers pursuant to various federal rules, including FRCP 15, FRCP 17, and FRCP 60, even as late as after trial.  *See, e.g.*, *A.H. Fischer Lumber Co.*, 162 F.2d at 874 (finding that the district court improperly denied plaintiff's motion to amend pursuant to FRCP 15 because "[w]hat was involved was, at most, a mere misnomer that injured no one, and there is no reason why it should not have been corrected by amendment"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.  We see no good reason why Rule 17(a) should not have been applied here to allow the amendment proposed by [the plaintiff-appellant]. . . . The complaint's only pertinent flaw was the identity of the party pursuing those claims, and the proposed amended complaint submitted to the court with [the plaintiff-appellant]'s motion was, except for naming the selling shareholders as the plaintiffs on their own claims, virtually identical to the original complaint."); *Grandey v. Pac. Indem. Co.*, 217 F.2d 27, 29 (5th Cir. 1954) ("[T]his case is governed by the Federal Rules of Civil Procedure, particularly Rules 4(h) and 15 . . . . Under those liberal rules, the [appellee] should not be permitted to take advantage of a mere misnomer that injured no one, and the district court erred in refusing to permit the amendment of the summons and of the complaint and in dismissing the action."); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 516–17 (6th Cir. 2016) (finding that the district court did not abuse its discretion in amending judgment pursuant to FRCP 60 to fix a misnomer; namely, that the defendant was a limited liability company and not a corporation and noting that "[e]ven a cursory review of the record reveals that the parties, the judge, and the jury knew that [the] [p]laintiff's suit was brought against her former employer, regardless of that entity's name or legal structure," and that "there is no reason to believe that the trial would have looked any different had the misnomer been corrected earlier in the proceedings"); *Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980) ("A plaintiff may usually amend his complaint under Rule 15(c) . . . to correct a misnomer of [the] plaintiff where the proper party plaintiff is in court; or to change the capacity in which the plaintiff sues; or to substitute or add as plaintiff the real party interest[.]"); *Jeff Smith Enters., LLC v. BMK Eng'g, Inc.*, 2019 WL 8012419, at *1 (E.D. Va. Jan. 24, 2019) (holding, pursuant to Rule 60(a), that "[w]hen all parties at trial understood who the parties were, even if one

of the parties was proceeding under the wrong name, courts will uphold the judgment and allow the judgment to be amended to reflect the correct party name," and concluding that "Jackson Smith Construction, LLC, and Jeff Smith Enterprises, LLC, are the same entity").[37]

Thus, while OHA's rules do not specifically address the correction of a misnomer as grounds for amending a pleading, the Court cannot fathom why OHA disregarded the established practice under the FRCP to allow a party to amend its pleadings to cure a mere misnomer.  *Cf. Alares LLC v. Dep't of Veterans Affs.*, CBCA 6149, 21-1 BCA ¶ 37,906, 2021 WL 3579280 ("While our Board rules do not specifically address the correction of a misnomer as grounds for amending a pleading, Rule 17 of the Federal Rules of Civil Procedure, which the Board has previously applied in a situation comparable to the one here, provides that tribunals 'may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action,' and any substitution relates back for statute of limitations purposes to the original filing date of the suit or appeal." (quoting Fed. R. Civ. P. 17(a)(3))).

Contrary to Defendants' position, FRP's naming issue is not a "jurisdictional" defect.  *See In re QDN, LLC*, 363 F. App'x 873, 874 (3d Cir. 2010) (affirming the lower court's finding that a misnomer is "not a jurisdictional issue"); *Wentz v. Alberto Culver Co.*, 294 F. Supp. 1327, 1329 n.4 (D. Mont. 1969) ("The court deems the correction of misnomers to be a matter of federal procedural law[.]"); *Kroiss v. Cincinnati Ins. Companies*, 2020 WL 5821047, at *3 n.5 (M.D.N.C. Sept. 30, 2020) ("To the extent [Defendant] argues that subject matter jurisdiction does not exist because Plaintiffs brought the present complaint under a misnomer, that argument fails.  The misnomer of Defendant's corporate name is better considered a procedural issue impacting process, rather than an issue of jurisdiction." (citation omitted)); *Incase Designs, Corp. v. Mophie, Inc.*, 2013 WL 12174145, at *3 (N.D. Cal.

---

[37] *See also Jackson v. Duke*, 259 F.2d 3, 7 (5th Cir. 1958) ("The trial court had no doubt that the defendant W. T. Jackson was the party intended to be sued.  Since the right party was before the court, although under a wrong name, the trial judge properly allowed the amendment to cure the misnomer.  Like any other amendment, under Rule 15(c) it relates back to the date of the filing of the original complaint.  There is no merit therefore to the argument that the plaintiff's action was barred as to the defendant W. T. Jackson."); *Fluoro Elec. Corp. v. Branford Assocs.*, 489 F.2d 320, 325–26 (2d Cir. 1973) (holding that there was no error in granting the plaintiff's motion for correction of a misnamed party defendant and in directing clerk to delete the words "a corporation" from the defendant's name in the judgment, pursuant to FRCP 60); *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 225 (4th Cir. 1999) ("It is unclear in the record why the misnomer occurred and why the Contractor is named differently in the Application and the final judgment.  Assuming that the Morrels discovered the error in the Application after it had been filed, the better practice would have been to move for permission to amend the corporate defendant's name under Rule 15(a) of the Federal Rules of Civil Procedure.  Nevertheless, the final judgment remains proper and binding on the Contractor even without such an amendment.").

Nov. 5, 2013) (dismissing defendant's argument that a "misnomer is an incurable jurisdictional defect" and finding that "plaintiff's misnaming itself 'Incase Designs, Inc.' in the complaint rather than 'Incase Designs Corp.' is . . . a mere technical error" curable by FRCP 15).  Rather, the naming error was a remediable procedural problem that could have been easily corrected by amending the pleadings.  Again, "[r]eal party in interest, unlike standing, is not jurisdictional."  *Mitchell Food Prod., Inc.*, 43 F. App'x at 369–70.

### 2.   FRP's New York State Corporate Registration Is Irrelevant

The Court's discussion above disposes of all of the government's and NWI&T's arguments save one, which Defendants advance in several variations on the same basic flavor:

> [B]ecause a partnership cannot be the same entity as a corporation, and because [P]laintiff admits that it is registered as a New York corporation, which its DUNS number confirms, Focus Revision Partners (*i.e.*, the partnership), cannot be the entity that responded to the solicitation public announcement and so is not an interested party [for the size appeal].

Def. MJAR at 11 (citations omitted); *see also id.* at 16 (asserting that FRP's "argument is predicated on its erroneous assumption that a corporation, partnership, or an LLC can be the same entity, which they cannot"); *id.* at 20 (arguing that given FRP's "confusing and contradictory statements" about its corporate status, "OHA acted well within its reasonable discretion to deny" FRP's motion to amend); Intv. MJAR at 21 ("[I]t was not in any way irrational or unreasonable for SBA OHA to identify these various entities as separate entities when New York fully requires it.").

Contrary to Defendants' repeated reliance on New York law to argue that there is an inherent, disqualifying contradiction between FRP's SAM registration and a similarly named company registered in New York,[38] FRP explained the discrepancy.  *See* AR 2546 (Declaration of Z. Momeni).  In particular, FRP explained that it is a joint venture between two companies: Leonard Jackson PE LLC (d/b/a Leonard Jackson Associates) and Taylor Engineering, Inc., with the former serving as the "managing venturer."  AR 2546.  FRP further explained that its counsel's use of the "JV LLC" nomenclature "in the size protest . . . was an inadvertent clerical error" because "[t]hese actions were brought by Focus Revision Partners."  AR 2546 (explaining that "Focus Revision Partners JV LLC does not exist" and that "[i]t is not a parent, subsidiary, sister, affiliate, or subcontractor to [FRP]").  Finally, FRP explained that it "was registered as a corporation with the New York Secretary of State" but that FRP, the joint venture, does not exist independently of the

---

[38] *See, e.g.*, Def. MJAR at 10–11, 16; Intv. MJAR at 15–16, 18–21; Tr. 16:10–14, 31:17–21.

incorporated entity.  AR 2546 ("[FRP], Inc. is [FRP].  It is not an entity separate and independent from [FRP]. . . . They are one and the same entity.").

Defendants point to no evidence in the administrative record contradicting FRP's explanation of the clerical error, but instead argue that its explanation is implausible under New York law.  There are a few fatal problems with Defendants' argument.  First, as the Court explains below, the contracting officer did not reach the question of whether FRP's SAM registration was somehow disqualifying.  Second, although NWI&T argued before OHA that "a corporation and a partnership are not legally the same type of entity" — relying upon *People v. Zinke*, 555 N.E.2d 263 (N.Y. 1990) — OHA's decision dismissing FRP's size appeal did not address the New York law question either.  AR 2587–88 (summarizing NWI&T's argument).  Notwithstanding OHA's failure to reach either of those issues, Defendants continue to press the argument that New York law somehow impedes FRP's status as a proper offeror or size protestor.  *See* Def. MJAR at 10–11; Intv. MJAR at 15.  Beyond continuing to assert that a partnership and corporation are different types of entities, Defendants cite no authority for the proposition that the mere existence of an incorporated entity sharing the same DUNS number renders FRP's SAM registration defective to the point of being an ineligible offeror.

In any event, Defendants greatly exaggerate the significance of *Zinke*, which is a criminal case that expressly disclaimed laying down any broad rules of corporate law:

> It is unimportant for the resolution of this appeal . . . to establish *any* substantive law about corporations or partnerships. The important point is that limited partnerships are *partnerships* in the eyes of the law of this State, and as such they come within the rule that partners cannot be guilty of larceny when they steal from them.

555 N.E.2d at 267.

Moreover, what is notable is what *Zinke* did not address: the federal government procurement process, registration in SAM, the legal significance of CAGE codes, or the status of joint ventures in New York law or under federal procurement law.  Indeed, the nature of joint ventures under both federal procurement law and New York law is far more complex than the simple picture Defendants paint.  *See* James A. Van Horn, *Driven to Team: A Brief Look into Joint Ventures in Pursuit of Government Contracts*, Fed. Law., Oct.–Nov. 2012, at 52, 52 ("In looking at the evolution of the concept of a joint venture in the government contract arena, the relevant case law and regulations illustrate the challenges associated with semantics and mechanics when courts and rule-making bodies try to capture this dynamic concept with a single name and definition.  The description of a 'joint adventurer' provided by the New York Court of Appeals in [*Atcheson v. Mallon*, 43 N.Y. 147, 151 (1870)], is not incorrect; however, it may be a bit dated and too simplistic,

as contractors have come a long way since earlier notions of joint ventures in government contracts.").

The FAR provides no universal definition of "joint venture," but the SBA — which "may be the most sophisticated agency when it comes to mat[t]ers of addressing and describing joint ventures," *id.* at 53 — permits a joint venture to "be in the form of a formal or informal partnership or exist as a separate limited liability company or other separate legal entity," 13 C.F.R. § 121.103(h).   While that particular regulation deals with affiliations that might preclude an entity from being recognized as a small business, the point is that "the SBA regulations appear to be in sync with the practical aspects of modern day joint venture concepts, which are more concerned with the dominant trait of a joint venture being the 'association of individuals and/or concerns' *and not the legal corporate distinctions*."   Van Horn, *supra*, at 53–54 (quoting 13 C.F.R. § 121.103 (2011)) ("[T]here is a dearth of federal regulation on these concepts outside of the SBA world.").

More importantly for our purposes, New York law recognizes that a joint venture is an informal partnership that may conduct business via a separate corporate entity.  A joint venture has been defined as "an informal partnership between two or more persons for a limited undertaking or purpose." *Chromalloy Am. Corp. v. Universal Hous. Sys. of Am., Inc.*, 495 F. Supp. 544, 549 (S.D.N.Y.1980) (quoting *Backus Plywood Corp. v. Com. Decal, Inc.*, 208 F. Supp. 687, 690 (S.D.N.Y. 1962)), *aff'd*, 697 F.2d 289 (2d Cir. 1982); *see also DeSmeth v. Samsung Am., Inc.*, 1998 WL 74297, at *6 (S.D.N.Y. Feb. 20, 1998) ("Under New York law, a joint venture is an informal partnership among two or more persons for a limited purpose.   The legal consequences of a joint venture are tantamount to those of a partnership."); *In re Wedtech Corp.*, 88 B.R. 619, 623 (Bankr. S.D.N.Y. 1988) ("The characteristics and legal consequences of a joint venture are virtually identical with those of a partnership.").

The existence of a corporate entity via which the joint venture conducts business does not present any sort of problem under New York law:

> A significant majority of New York courts have recognized that co-venturers may legally retain their joint venture status among themselves while operating as a corporation to the rest of the world and that the subsequent incorporation of a joint venture does not obviate the existence of a joint venture unless the parties specifically intend to merge the joint venture into the corporation.

*Cosy Goose Hellas v. Cosy Goose USA, Ltd.*, 581 F. Supp. 2d 606, 619–20 (S.D.N.Y. 2008) (citing *Sagamore Corp. v. Diamond W. Energy Corp.*, 806 F.2d 373, 378–79 (2d Cir. 1986)); *see also Blank v. Blank*, 634 N.Y.S.2d 886, 888 (1995); *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 585 (App. Div. 2003); *Rinaldi v. Casale*, 788 N.Y.S.2d 137, 139 (App. Div.

2004) ("The defendants' contention that the plaintiff and the decedent could not legally have carried on a joint venture or a partnership through a corporate vehicle such as Country Estates, Inc., did not warrant dismissal of the amended complaint, since it does not negate the possibility that a valid partnership or joint venture was created in which the corporate entity, Country Estates, Inc., was a mere conduit to hold title to the underlying property." (citations omitted)).[39]

In any event, New York's treatment of an incorporated entity purporting to be an instantiation of a joint venture has nothing to do with the issue here, which is whether the existence of such an incorporated entity somehow renders FRP's SAM registration inherently defective such that FRP is an ineligible offeror (*i.e.*, "technically unacceptable"). *See Raymond Express Int'l, LLC v. United States*, 124 Fed. Cl. 79, 88–90 (2015) (adopting the U.S. Government Accountability Office's ("GAO") finding that any ambiguity as to the identity of the offeror selected for contract did not render that offeror's proposal "technically unacceptable" (citing *Raymond Express Int'l, LLC*, B-409872.3, 2015 CPD ¶ 265, 2015 WL 5522051 (Comp. Gen. Sept. 11, 2015))). That, however, is not an argument Defendants make and, in any case, "technical acceptability" is a decision for the contracting officer in the first instance, and not this Court or OHA (as explained below). Indeed, contrary to Defendants' assertions, OHA *never* — not once — addressed NWI&T's argument regarding FRP's SAM registration and its associated DUNS number. *See* AR 2582–88 (OHA Dismissal Order). OHA *summarizes* NWI&T's argument in that regard, but OHA certainly did not *adopt* it. If anything, OHA rejected NWI&T's position insofar as OHA acknowledged that "*it may be true . . . that 'Focus Revision Partners' could have filed its own appeal*." AR 2587 (emphasis added). Notably, OHA summarized NWI&T's argument as follows: "In light of this [putative] inconsistency in the SAM profile, NWI&T maintains, *it is not clear* that 'Focus Revision Partners' would be eligible for award, or would have had standing to protest or appeal." AR 2587 (emphasis added). That is a far cry from what Defendants would have this Court believe: that OHA somehow reached a definitive conclusion regarding FRP's technical acceptability. Even had OHA done so, which it did not, such a determination would have been *ultra vires*, as explained below, and would have been patently inconsistent with the administrative record, which demonstrates that FRP is an entity that (a) is registered in SAM, and (b) FEMA acknowledged as an offeror and the size protestor.

Accordingly, this Court concludes that OHA did *not* purport to exercise any discretion based upon FRP's SAM registration or its then-associated DUNS number. Moreover, there is a good reason OHA did *not* reach that issue: OHA **is precluded by law**

---

[39] *See also Cosy Goose Hellas*, 581 F. Supp. 2d at 620 n.10 ("[I]t is unclear to the undersigned how other courts continue to hold that a joint venture terminates upon the subsequent incorporation of the venture when the parties evince no intent to merge the joint venture into the corporation and when such duality does not limit or impair the rights of third parties or the functioning of the corporation.").

*from doing so*.  That is because a size protest may be filed by "[a]ny offeror that the *contracting officer* has not eliminated from consideration *for any procurement-related reason*, such as non-responsiveness, *technical unacceptability* or outside of the competitive range." 13 C.F.R. § 121.1001(a)(1)(i) (emphasis added).  In other words, only the contracting officer — and not OHA — has the power to determine that an offeror's SAM registration is defective (or that there is sufficient confusion about the identity of the true offeror) to render an offeror ineligible for contract award.  *See Raymond Express Int'l, LLC*, 2015 WL 5522051, at *5 ("Uncertainty as to the identity of an offering entity renders an offer technically unacceptable, since ambiguity as to an offeror's identity could result in there being no party bound to perform the obligations of the contract."); *Alutiiq-Banner Joint Venture*, B-412952, 2016 CPD ¶ 205, 2016 WL 4258853, at *10 (Comp. Gen. July 15, 2016) (same).[40]

In short, it is for the procuring agency — in this case, FEMA — to render a decision about FRP's status in SAM, not OHA.  If the past is any indication, FEMA does not insist on the precision Defendants now (erroneously) maintain is required.  In *Intelligent Investments, Inc.*, B-406347, 2012 CPD ¶ 193, 2012 WL 2673225, at *3 (Comp. Gen. Apr. 27, 2012), for example, FEMA made a contract award to Riley's Mobile Homes, Inc. ("RMH"), but the protestor argued that the awarded entity did not exist.  Although the GAO acknowledged that "'Riley's Mobile Homes, Inc.,' the awardee indicated on the FedBizOpps award notice, and the business name listed in the CCR entry, no longer exists as an incorporated entity,"[41] and that "Riley's Mobile Home's, Inc. was dissolved in 2000," GAO found no difficulty with FEMA's having accepted that "RMG submitted its proposal as a sole proprietorship."  *Id.*  The GAO rejected the protestor's arguments regarding discrepancies between the awardee's proposal and its CCR entry, explaining as follows:

> In sum, notwithstanding the reference in the award notice to "Riley's Mobile Homes, Inc.," we accept the agency's explanation that it treated "Riley's Mobile Homes, Inc." as a fictitious business name for the sole proprietorship to which

---

[40] The burden on a protestor challenging an offeror's identity is a heavy one and the GAO will defer to the contracting officer's assessment.  *See Raymond Express Int'l, LLC*, 2015 WL 5522051, at *5 ("Here, Raymond has not sufficiently established that there is ambiguity regarding MPG's identity that could result in no party being bound to perform the obligations of the contract. While it is true, as Raymond points out, that MPG's proposal referred to the offering entity using various — albeit similar — names, the record reflects that the proposal listed only one CAGE code and only one DUNS number . . . . Finally, the contracting officer and MPG have stated on the record that MPG West, LLC was understood to be the intended offeror.").

[41] "FedBizOpps" (also known as "FBO") is SAM's predecessor.  *See FBO.gov is Transitioning to beta.SAM.gov*, U.S. Gen. Servs. Admin., https://www.gsa.gov/cdnstatic/FBO_Is_Transitioning _to_Beta_Factsheet_(1).pdf [https://perma.cc/DFR9-UCJM] (last visited Sept. 6, 2022).

it made award.  In any case, *we have held that the name of an offeror need not be exactly the same in all of the offer documents when information readily available to the agency reasonably establishes that the differently-identified entities are in fact the same concern*.  Here, there is no reasonable concern that the Riley's Mobile Homes that submitted a proposal is an entity different from the Riley's Mobile Homes, Inc. listed in the award notice.

*Id.* at *4 (emphasis added) (citation omitted);[42] *see also Network Sec. Techs., Inc.*, B-290741.2, 2002 CPD ¶ 193, 2002 WL 31538210, at *9 (Comp. Gen. Nov. 13, 2002) ("[W]e find it is plain from the proposal that VAST is simply an acronym for the registered entity and that the three designations identify the same entity; the different designations are clearly synonymous and present no ambiguity whatsoever as to the identity of the offeror.  [The protestor]'s arguments to the contrary are 'make weight' at best.").[43]

The Court further finds itself troubled by the fact that NWI&T's arguments regarding technical naming errors smack of rank hypocrisy given its apparent position in response to FRP's size protest regarding apparent discrepancies within the SAM registrations of NWI&T's parent joint venturer entities.  *See* AR 2081–82 (SBA Size Determination) (noting NWI&T's argument that updating an existing entity's name in SAM takes time but that a "name change does not make [a company] a different entity or party"); AR 2083 ("North Wind has fully intended (and will soon) to update its name with SBA after its legal name is updated in SAM, but this will not make North Wind a

---

[42] Notably, in the procurement at issue in *Intelligent Investments, Inc.*, another offeror challenged RMH's small business size status.  2012 WL 267322, at *2.  The contracting officer forwarded that size protest to the SBA for a size determination; the SBA found RMH to be a small business.  *Id.*  Relatedly, the SBA rejected claims that RMH lacked an office or valid physical address as "'belied by RMH's receipt of the protest materials' sent to the address listed in its proposal."  *Id.*  That conclusion, of course, is similar to the point the Court has made here regarding the fact that at all times FEMA has had no problem identifying FRP as both an offeror and the size protestor.

[43] Even assuming the current SBA regulations would have dictated a different outcome in these GAO protest matters, the Court's decision here is not impacted because, in any event, these offeror identity and SAM registration issues are for the relevant procuring agency and its contracting officer to resolve in the first instance, not OHA.  *See Davis Strategic Innovations, Inc.*, B-413305, 2016 CPD ¶ 267, 2016 WL 5389789, at *2 (Comp. Gen. Sept. 26, 2016) (accepting NASA's evaluation "that the firms are the same entity" based on "a declaration from the president of MECˣ, Inc., explaining the company's history"); *id.* at *3 n.9 ("The president of the company explains that MECx, LP, was restructured as a corporation (MECˣ, Inc.) in 2013, to buy out his business partner and to recertify as a [service-disabled veteran-owned small business].").  Here, too, an executive vice president of FRP's managing venturer submitted a declaration explaining FRP's history, including the characterization of the offeror's corporate status, AR 2546, but OHA did not address it — likely because, as the Court holds, OHA recognized that issues involving FRP's registration and corporate status are for the contracting officer to decide.

different entity and will not change the [joint venture agreement].").  Thus, according to NWI&T and the appealed size protest decision, FRP may update its SAM entry to reflect a new name (or to make other changes).  *See* AR 2083 ("SBA has determined that a name change does not change the parties[.]").

In any event, Defendants do not dispute that FRP is registered in SAM. Defendants do not dispute that FRP's SAM registration includes an associated UEI and CAGE code.[44]  Defendants do not dispute that the cognizant FEMA contracting officer: (1) notified the very same FRP entity registered in SAM that its offer would not be accepted; and (2) recognized FRP as the offeror and size protestor when the contracting officer transmitted the size protest at issue to the SBA.  Under the circumstances, that is all that is necessary to demonstrate that FRP is a proper offeror — and the real party-in-interest — at least for the purposes of its size protest and its appeal before the SBA.  In short, this Court agrees with FRP's parry:

> Focus Revision Partners *is* registered in *SAM.gov*.  This is the same entity that submitted a bid and that challenged NWI&T Atkins' size (albeit under the incorrect name).  And though the Government and NWI&T Atkins now spill a lot of ink railing on the difference between [FRP]'s *SAM.gov* and New York corporate registrations, neither point to any FAR provision that say an entity's *SAM.gov* registration must perfectly match its corporate registration to be awarded a contract.  No such provision exists—instead, because Focus Revision Partners was registered in *SAM.gov* at the time it submitted its bid, it met the requirements of FAR 52.204-7(b).

Pl. Reply at 10 (citations omitted).

---

[44] *See BDO USA, LLP*, B-416504.2, 2019 CPD ¶ 186, 2019 WL 2296815, at *6 (Comp. Gen. May 22, 2019) ("CAGE codes are used to identify the entity that is the offeror for a given procurement."); *URS Group, Inc.*, B-402820, 2010 CPD ¶ 175, 2010 WL 3011260, at *3 (Comp. Gen. July 30, 2010) ("CAGE codes are assigned . . . to discrete business entities for purposes of executing payments under government contracts and to track the ownership of technical data."); *Gear Wizzard, Inc.*, B-298993, 2007 CPD ¶ 11, 2007 WL 257928, at *1 (Comp. Gen. Jan. 11, 2007) ("CAGE codes are assigned to discrete business entities for a variety of purposes . . . to dispositively establish the identity of a legal entity for contractual purposes."); *DynCorp Int'l LLC v. United States*, 152 Fed. Cl. 490, 506 (2021) ("[F]ederal agencies . . . may reasonably rely on CAGE codes to accurately identify contractors."); *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 744 n.26 (2008) ("CAGE codes are used to dispositively establish the identity of a legal entity for contractual purposes." (quoting *Perini/Jones, Joint Venture*, B-285906, 2002 CPD ¶ 68, 2000 WL 33741037, at *5 (Comp. Gen. Nov. 1, 2000))).

Defendants' reliance on FRP's DUNS number to argue that FRP was not an offeror and lacked standing to protest or appeal to OHA makes a mountain out of a miniscule molehill.  For starters, although SAM did not eliminate its use of DUNS numbers until earlier this year, *see* discussion *supra* Section V.A.1, they are legally unimportant because the FAR eliminated its reliance on DUNS numbers — and removed all references to them — in 2016.  *See* 81 Fed. Reg. at 67,736 ("The change to the FAR eliminates references to the proprietary [DUNS] number, and provides appropriate references to the Web site where information on the unique entity identifier used for Federal contractors will be located.").  The government notes that "[t]he [S]olicitation required interested vendors to provide the legal company name and DUNS number" in its SF 330,[45] Def. MJAR at 16 n.3 (citing AR 2169), but the document cited by the government for that proposition does not specify a consequence for including a DUNS number in the SF 330 that may be associated with a corporate entity whose name or type is inconsistent with the entity's SAM registration.

Defendants argue at length that because there is a unique DUNS number associated with "Focus Revision Partners, Inc." and that DUNS number "does not relate to any other entity," such evidence "confirms that only FRP, Inc. is registered in SAM," and not FRP (*i.e.*, without "Inc.").  Intv. MJAR at 27 n.8; Def. MJAR at 16 ("[E]ven assuming that there is 'only one Focus entity,' that entity must be Focus Revision Partners Inc., the New York corporation, not the partnership, because that is the only entity that was incorporated and registered with DUNS.").  Defendants' assertions are flatly contradicted by the administrative record.  The name of the entity registered in SAM is "Focus Revision Partners" — *not* "Focus Revision Partners**, Inc.**"  AR 2548.  The fact that the SAM entry previously included a DUNS number that was associated with a New York corporate registration at most merely begs the question whether the state corporate registration is correct or whether the SAM registration should be updated.  In any event, not only did the FAR eliminate the significance of the DUNS number, but also SAM no longer even reports that identifier.

Defendants posit that an inconsistency between an entity's SAM entry and a state corporate registration is *per se* disqualifying, but Defendants cite no authority for that proposition.  Moreover, GAO consistently has rejected similar arguments.  *See Davis Strategic Innovations, Inc.*, 2016 WL 5389789, at *4 ("[Protestor] also suggests that MEC$^x$, Inc., lacks legal authority to use the same DUNS number and CAGE code that were previously assigned to MEC$^x$, LP, and that this usage is somehow 'problematic.' [Protestor], however, cites no legal authority to support its largely conclusory assertions." (citations omitted)); *ASRC Fed. Sys. Sols., LLC*, B-420443, 2022 CPD ¶ 96, 2022 WL 1166016, at *12 (Comp. Gen. Apr. 12, 2022) (finding no procurement error where "NASA verified, by searching the SAM database, that QuantiTech, Inc., and QuantiTech, LLC, are

---

[45] "The SF 330, Architect-Engineer Qualifications, shall be used to evaluate firms before awarding a contract for architect-engineer services[.]"  FAR 36.702(b).

associated with the same DUNS number and CAGE code").  The Court once again notes that these are all issues for the contracting officer, and although the Court has no need to reach the issue, "[w]ith respect to allegations that an offeror's SAM registration is inaccurate or incomplete," the GAO "has generally recognized that minor informalities related to SAM (or its predecessor systems) registration generally do not undermine the validity of the award and are waivable by the agency without prejudice to other offerors." *Jade Excavation, Inc.*, B-419515, 2021 CPD ¶ 128, 2021 WL 1060118, at *2 (Comp. Gen. Mar. 18, 2021) (citing cases and explaining that the GAO has "found no prejudicial error in these cases largely because an awardee's registration status does not implicate the terms of its bid, and there is nothing to suggest that another offeror would have altered its bid to its competitive advantage in response to a relaxed SAM registration requirement").

NWI&T maintains that FRP's offeror status — specifically as it relates to SAM registration — may be decided by OHA because "OHA has several times concluded that an entity ineligible for award for reasons other than size does not have standing to file a size appeal."  Intv. MJAR at 28 (citing *Integrity Mgmt. Int'l, Inc.*, SBA No. 3586, 1992 WL 68260, at *1–2 (Feb. 27, 1992)).  That assertion lacks candor.  In the cited OHA decision, *Integrity Management International, Inc.*, the appellant "failed to disprove, or even to challenge, *the Contracting Officer's statement* that it was barred from submitting a best and final offer under the solicitation."  1992 WL 68260, at *2 (emphasis added) (holding that appellant's inability to refute the contracting officer's statement "rendered [the appellant] ineligible for award of the contract and lacking in that stake in the outcome of a size status challenge to the awardee necessary to maintain standing to file such a challenge or to appeal the outcome of such a challenge to [OHA]").  In this case, as the Court explained *supra*, FEMA's contracting officer, if anything, made the contrary determination, characterizing FRP as an offeror or protestor, never once suggesting that there is a defect in FRP's status as an offeror.  In the language of the SBA regulation, FRP was not eliminated from the procurement for reasons other than size.  *See* 13 C.F.R. § 121.1001(a)(1)(i) ("[T]he following entities may file a size protest in connection with a particular procurement, sale or order: . . . Any offeror that the contracting officer has not eliminated from consideration for any procurement-related reason, such as non-responsiveness, technical unacceptability or outside of the competitive range[.]").

NWI&T further asserts that the "SBA has dismissed appeals brought by technically unacceptable offerors even when those offerors were not informed of this fact by the contracting officer."  Intv. MJAR at 28 (citing *Glen/Mar Constr., Inc.*, SBA No. SIZ-5143, 2010 WL 2940769, at *2 (July 12, 2010)).  But, in the case cited, *Glen/Mar Construction, Inc.*, the contracting officer at least determined that a putative offeror was technically unacceptable.  2010 WL 2940769, at *2 ("The [contracting officer] confirmed that the proposal had been deemed unacceptable on March 2, 2010.").  While the contracting officer failed to communicate that determination to the offeror in question, the adverse determination was part of the record; indeed, the contracting officer communicated his determination to the cognizant SBA area office responsible for resolving the protest.  *Id.*

at *1 ("In his referral letter, the [contracting officer] provided that '[t]he protesting party would not be considered for award of this task order regardless of the outcome of this protest due to the fact that their proposal was determined to be technically unacceptable in accordance with the evaluation factors listed in the solicitation.'" (second alteration in original)).  Here, in material contrast, the contracting officer made no such determination and Defendants know it.

In sum, FRP has demonstrated that it is entitled to judgment on the administrative record.

### C.  The Parties' RCFC 52.2 Motion and Relief

Given the Court's decision in favor of FRP, the Court grants in part, and denies in part, the parties' joint motion to remand this case to the SBA, pursuant to RCFC 52.2, for it to "reconsider its decision dismissing [FRP]'s size appeal."  Mot. to Remand at 1.

According to the parties, "OHA is prepared to vacate its order granting NWI&T's motion to dismiss [FRP]'s size appeal and denying [FRP]'s motion to amend."  *Id.*  Although the parties assert that "OHA will then issue an order consistent with the reasoning articulated by the Court at oral argument," *id.*, the Court did not issue any definitive final decision during oral argument supported by any specific reasoning.  In any event, the parties — including the government — represent that, on remand, "OHA will proceed to consider the merits of [FRP]'s size appeal."  *Id.*  Finally, the parties assert that granting their joint motion would "be in the interest of judicial economy as it would obviate the need for the Court to draft and issue an opinion on the merits of [FRP]'s protest of OHA's actions."  *Id.* at 2.

There is no way to read this as anything other than Defendants' confession of a serious error.[46]  The government and NWI&T each filed lengthy briefs in which they insisted that this Court, as a matter of law, could not remand this case back to OHA to correct the name of the size appellant.  Although they did not say so expressly, Defendants' arguments implicate FRP's standing before this Court as an interested party

---

[46] *See Haggart v. Woodley*, 809 F.3d 1336, 1345 (Fed. Cir. 2016) ("We are not bound to accept the Government's confession of error nor does it relieve us of our obligation to examine independently the errors confessed." (citing *Young v. United States*, 315 U.S. 257, 258–59 (1942))); *Lentz v. Merit Sys. Prot. Bd.*, 876 F.3d 1380, 1385 (Fed. Cir. 2017) ("If it appears reasonably probable that a confession of error reveals a genuine and potentially determinative error by the court below, [an order to vacate and remand] may be appropriate." (alteration in original) (quoting *Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 172 (1996))); *Owens & Minor Distribution, Inc. v. United States*, 154 Fed. Cl. 349, 352, 355 (2021) (denying government's remand request where the Court found that the government effectively "has confessed that error in open court" and that "[i]ts attempt to retreat from that confession is unavailing").

— and hence this Court's jurisdiction — at every turn.  Indeed, NWI&T actually moved to dismiss this case based on FRP's supposed failure to exhaust administrative remedies, which may itself be a jurisdictional issue.[47]   *See* Intv. MJAR at 14–16.  During oral argument Defendants doubled-down, insisting that the FRP's naming error is "not correctable."  Tr. 92:6–8; Tr. 103:1–7; *see also* Tr. 10:9–17 (NWI&T arguing that OHA is precluded from changing the size appellant's name as a "jurisdictional[]" matter).  Now, however, within two weeks of oral argument — and absent any explanation whatsoever for the change in position — Defendants have turned on a dime and effectively concede that all of their standing and jurisdictional arguments are wrong.[48]

Nevertheless, the Court denies, in part, the joint motion because RCFC 52.2 addresses a case in which the Court requires the remand results to be reported back to the Court for possible further proceedings.  *See* RCFC 52.2(d); *see also Todd Constr., L.P. v. United States*, 88 Fed. Cl. 235, 245 (2009) (collecting cases and commenting that "[t]he common theme running through these cases is that the remand does not mandate a particular factual determination, but directs the agency's attention to matters the court believes require further action to create an adequate record for the agency's decision").

In FRP's case, OHA did not issue a decision on the merits of FRP's size appeal; because no merits decision on the size protest or appeal is being sent back to the SBA, there is no reason for this Court to retain jurisdiction.  Simply put, there is nothing for OHA to report back to the Court for which the Court should stay this matter and retain jurisdiction.  To the contrary, although FRP's complaint asked this Court to decide that NWI&T is ineligible for award, Compl. at 18, because "it is not an eligible small business under the [S]olicitation," *id.* ¶ 61 (Count III), FRP entirely abandoned that claim, *see* Intv. MJAR at 34 (correctly asserting that "[s]ince Plaintiff failed to raise any argument supporting Count 3 of its Complaint, this Court should rule that Count 3 is abandoned and should be dismissed"); *see also* Def. MJAR at 24 (correctly arguing that FRP's "desired review of the merits of the remand size determination is not ripe for review by this Court" and that OHA "has not reached the merits of the underlying size protest").  The idea that this Court should retain jurisdiction is something the government has strenuously argued

---

[47] *Compare Kenyon v. United States*, 683 F. App'x 945, 949 (Fed. Cir. 2017) ("Irrespective of whether filing such a claim is a jurisdictional requirement, a question we do not reach, dismissal for failure to exhaust administrative remedies is appropriate in this case."), *and United States v. Priority Prods., Inc.*, 793 F.2d 296, 300 (Fed. Cir. 1986) ("Exhaustion of administrative remedies is not strictly speaking a jurisdictional requirement and hence the court may waive that requirement and reach the merits of the complaint."), *with U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1350 n.3 (Fed. Cir. 2005) ("[W]e do not reach the government's jurisdictional argument based on exhaustion.").

[48] The Court does recognize, however, that the joint motion to remand is not necessarily inconsistent with Defendants' argument that OHA did not abuse its discretion in denying FRP's motion to amend.

against.  *See* Def. MJAR at 22 ("[T]he size challenge is not ripe for the this Court's review and the Court should deny [FRP]'s request that the Court retain jurisdiction.").  The Court agrees with the government's position concerning this issue in its motion for judgment on the administrative record.  *Id.* at 22–24.

Accordingly, this is not a case where a plaintiff has challenged an agency decision and the Court should require the agency, pursuant to RCFC 52.2, to reconsider its decision subject to a possible subsequent round of judicial review.  *See, e.g., Tech Sys., Inc. v. United States*, 50 Fed. Cl. 216, 218 (2001) (explaining that the trial court remanded the case to the agency "to allow the contracting officer to issue a [new best value decision]," which subsequently "was filed with the court," triggering the plaintiff's renewed protest); *Newimar S.A. v. United States*, 160 Fed. Cl. 97, 120 (2022) ("If necessary, a court may remand the case back to a governmental agency under RCFC 52.2 for further factual findings."); *Seventh Dimension, LLC*, 2022 WL 2980491, at *19 ("Accordingly, pursuant to RCFC 52.2, the Court retains jurisdiction of this matter pending the Army's compliance with this injunction and remand.  The Court will delay the entry of final judgment given the possibility of further proceedings."); *ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 210 (2018) ("[B]ecause cancellation is being left open as a possibility, the Court will defer the entry of judgment in this case. . . . [T]he Court will require that defendant file a status report . . . informing the Court if the agencies have decided either to amend the [Request for Quotes] or to cancel the procurement.  If the latter route is taken, plaintiff may either move for an award of bid preparation and proposal costs, or file a supplemental complaint to challenge the action[.]"); *Driscoll v. United States*, 2022 WL 3330432, at *4 (Fed. Cl. Aug. 11, 2022) ("Pursuant to RCFC 52.2(e), the parties SHALL FILE notice with the Court within thirty days of the [Army Board for the Correction of Military Records]'s completion of its actions on remand stating whether such actions afford a satisfactory basis for the disposition of the case and whether the parties require further proceedings before the Court." (emphasis omitted)); *Syncon, LLC v. United States*, 154 Fed. Cl. 442, 452 (2021) ("Remand is a procedure that permits this court to give 'due regard' to 'the need for expeditious resolution of the action,' while permitting the agency to reconsider its decision after further development of the factual record.  After a remand, this court considers the whole record before the agency, not merely the record as it existed before the remand." (citation omitted) (quoting 28 U.S.C. § 1491(b)(3))); *E&L Constr. Grp., LLC v. United States*, 159 Fed. Cl. 115, 123 (2022) ("Pursuant to RCFC 52.2(e), the parties are directed to FILE a notice within five days after the conclusion of remand proceedings that sets forth the parties' positions regarding whether further litigation of this matter is necessary." (emphasis omitted)).

In sum, there is, in this case, only a single, discrete merits issue before this Court: whether OHA's refusal to amend FRP's pleadings to correct its name (and the concomitant dismissal of its OHA appeal) was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.  Because the Court answered that question in the affirmative, final judgment — ending this case in favor of FRP — is warranted.

The only remaining question is the appropriate relief that should accompany a final judgment. On that score, this Court grants the parties' joint motion, in part, and remands this matter to the SBA with instructions for OHA to: (1) vacate its order granting NWI&T's motion to dismiss FRP's size appeal and denying FRP's motion to amend; (2) amend FRP's pleadings consistent with this opinion and order; and (3) proceed to consider the merits of FRP's size appeal. Mot. to Remand at 1.[49] Apart from Defendants' effective concession that such relief is appropriate here (or at least legally permissible), this is the relief FRP sought in its complaint, *see* Compl. at 18, and the Court has the power to order it in support of a final judgment pursuant to 28 U.S.C. §§ 1491(a)(2) and 1491(b)(2) (*i.e.*, without invoking RCFC 52.2). *See IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 65–66, 79–80 (2022) (discussing the Tucker Act's "Remand Statute," 28 U.S.C. § 1491(a)(2), and its application in actions pursuant to 28 U.S.C. § 1491(b)(2)); *Rush Constr., Inc. v. United States*, 117 Fed. Cl. 85, 104 (2014) (instructing "[t]he Clerk [to] enter judgment remanding this case to the contracting officer for appropriate action consistent with Opinion and Order"); *Travelstead v. Derwinski*, 978 F.2d 1244, 1249 (Fed. Cir. 1992) (explaining that "remands are not all of the same nature" and noting that "[s]ome are final; some are not"); *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003) ("When there is a remand to the agency which remand grants relief on the merits sought by the plaintiff, and the trial court does not retain jurisdiction, the securing of the remand order is itself success on the merits.").[50]

## VI.   CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's motion for judgment on the administrative record with respect to Counts I and II of Plaintiff's complaint, and **DENIES** Defendant's and Defendant-Intervenor's respective motions for judgment on the administrative record. The Court **DENIES** Defendant-Intervenor's motion to dismiss.

---

[49] Given the parties' joint motion, concurring in the substance of an appropriate remand, the Court need not decide whether a remand with these instructions requires injunctive or declaratory relief. *Compare Todd Constr., L.P.*, 88 Fed. Cl. at 246 ("In the event that the Court finds procedural deficiencies or an unfair evaluation, the Court should use its power to issue a declaratory judgment to assist the agency, on remand, to address the identified concerns."), *with Lyons Sec. Servs., Inc. v. United States*, 38 Fed. Cl. 783, 788 (1997) (granting plaintiff's "request for declaratory and injunctive relief" and entering "judgment remanding this case to the contracting officer for appropriate action consistent with this Opinion and Order"). *See also* Def. MJAR at 24 ("[S]hould the Court find that [FRP] has standing, remand is appropriate."). In any event, Defendants do not argue that FRP must meet the injunctive relief standards to obtain the declaratory relief FRP seeks along with the associated remand with instructions. *See* Compl. at 18.

[50] *See also Sullivan v. Finkelstein*, 496 U.S. 617, 625 (1990) ("The District Court's remand order was unquestionably a 'judgment,' as it terminated the civil action challenging the Secretary's final determination that respondent was not entitled to benefits[ and] set aside that determination[.]").

The Court further **GRANTS IN PART** and **DENIES IN PART** the parties' joint motion to remand.

Accordingly, the Court **GRANTS** Plaintiff's request for declaratory relief, and **REMANDS** this matter to the SBA, consistent with this opinion and order and the instructions contained herein.  The Clerk of the Court is directed to enter **JUDGMENT** for Plaintiff, terminating this case.

**IT IS SO ORDERED**.

<u>s/Matthew H. Solomson</u>
Matthew H. Solomson
Judge